(81 South. 265)

No. 23179.

TUYES v. CHAMBERS.

(Jan. 6, 1919. On Application for Rehearing, March 12, 1919.)

*(Syllabus by Editorial Staff.)*

1. EVIDENCE ☞10(1) — JUDICIAL NOTICE—VENUE.

Petition in action for slanderous and libelous words, stating that petitioner had purchased goods from defendant, "a resident of this city and state," meant the city and state in which the petition was drawn and presented, that is, the city of New Orleans and the state of Louisiana, as court to which petition was addressed would take cognizance of name of city and state in which it sits.

2. PLEADING ☞46—RESIDENCE OF PLAINTIFF —PETITION.

A petition in an action for slanderous and libelous words, annexing a circular giving plaintiff's address and elsewhere referring to plaintiff's residence on a named street and to fact that she had lived in New Orleans all her life, but not setting out residence in usual manner and place in petition, sufficiently. stated plaintiff's residence in New Orleans.

3. PLEADING ☞406(9)—PETITION—EXCEPTION OF VAGUENESS—WAIVER.

Where defendant urged in limine an exception to the petition and that plaintiff particularize, and after that exception was overruled did not urge a proper general objection to testimony at inception of case, and where proof was admitted without objection, its effect was to amend the pleading, and the exception to that extent was waived.

4. LIBEL AND SLANDER ☞33—PRESUMPTIVE DAMAGES.

There is a species of injury resulting from a libel or slander, from the very nature of the words or writing, which the law presumes.

5. LIBEL AND SLANDER ☞89(1) — SPECIAL DAMAGES—PROOF.

There is a species of injury flowing from libel or slander, known as special damage, which must be alleged and proved.

6. LIBEL AND SLANDER ☞89(2)—PETITION—SPECIAL DAMAGES.

Petition in action for libelous and slanderous words, which set out defendant's acts and alleged that plaintiff had almost had nervous prostration and was ashamed to go out in street in her neighborhood, or to meet her friends, because of defendant's statement that she owed him money which she refused to pay, alleged an injury to her reputation.

7. LIBEL AND SLANDER ☞12—SPECIAL DAMAGES—ALLEGATION AND PROOF.

An oral charge that one is trying to avoid and refused to pay an honest debt gives rise to special damages, which must be alleged and proven.

8. LIBEL AND SLANDER ☞6(3)—ACTIONABLE WORDS—INJURY TO REPUTATION.

A charge that one is trying to avoid and refuses to pay an honest debt, when made in writing and published, is actionable per se.

9. THREATS ☞1(1)—EXTORTION—MONEY DUE.

It makes no difference that the money sought to be extorted, in violation of Act 110 of 1908, p. 166, was legally due.

10. ACTION ☞5—RIGHT OF ACTION—INJURY.

While violation of a penal statute does not give rise to a private action, unless complainant has suffered some special injury, yet if there be such special injury, of a kind of which the law can take cognizance, the right to recover follows.

11. LIBEL AND SLANDER ☞119—DAMAGES—MENTAL SUFFERING.

The Louisiana law of torts, found principally in the Civil Code, particularly Civ. Code, art. 2315, taken from the civil law, recognizes a right of action for mental suffering or injury to the feelings, unaccompanied by any physical injury.

12. LIBEL AND SLANDER ☞13—DAMAGES—MENTAL SUFFERING—RECOVERY.

Under Civ. Code, art. 2315, slanderous and libelous words intended to bring about such a mental condition as would induce compliance with an illegal demand for the payment of a debt, bordering on blackmail or extortion, cause a special damage.

On the Merits.

13. LIBEL AND SLANDER ☞24—PUBLICATION.

Where it was alleged that slanderous words were spoken to a third person, who denied hear-

ing them, there was no publication, in the sense that no third person heard the slanderous words.

**14. LIBEL AND SLANDER &⟶54—DEFENSE—TRUTH.**

Though creditor said to third person that plaintiff owed him, or asked her to pay it in presence of others, without other defamatory or derogatory remarks, he might, under Marr's Rev. St. § 6779, prove truthfulness of statements.

**15. APPEAL AND ERROR &⟶931(1)—WEIGHT OF EVIDENCE—FINDING IN FAVOR OF PLAINTIFF.**

Where the lower court allowed a recovery for plaintiff, the Supreme Court must assume that, whenever the weight of evidence was involved, it found it in favor of plaintiff, unless the Supreme Court is convinced of the contrary by the record itself.

**16. LIBEL AND SLANDER &⟶6(3)—ACTIONABLE WORDS—INJURY TO REPUTATION.**

Publication of plaintiff's name on list of delinquent debtors, as part of a plan to extort money which defendant claimed to be due him, intending to impute a refusal to pay her just debts and to destroy her reputation for integrity, though not specifically so charging, was actionable per se, if by fair implication and reasonable interpretation it had that effect.

**17. LIBEL AND SLANDER &⟶25—PUBLICATION.**

Where defendant and his collection agency mailed to plaintiff the first and second demands for payment of a debt, as well as the list of delinquent debtors issued, handled, and mailed by the agency, imputing plaintiff's refusal to pay a just debt, there was a sufficient publication.

Provosty, J., dissenting in part.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by Mrs. Cecile Tuyes against Loan J. Chambers. Judgment for plaintiff, and defendant appeals. Affirmed.

James Barkley Rosser, Jr., of New Orleans, for appellant.

Woodville & Woodville, of New Orleans, for appellee.

DAWKINS, J. This is an action sounding in damages for alleged slanderous and libelous words and matter which plaintiff claims were uttered and published by defendant in order to compel her to pay a debt which she alleges she did not owe. Summarized, the grounds of complaint were, in substance, about as follows:

(1) Insulting and defamatory remarks made at King's grocery store, corner Thalia and Dryades streets, in which it is alleged that defendant called her a "deadbeat" and asserted that she was "no lady."

(2) Similar remarks made to plaintiff's daughter, Mrs. Blanche McCann, on Melpomene street, in which defendant is alleged to have again referred to plaintiff as a "deadbeat" and stated that she was "no good."

(3) Printing and publishing plaintiff's name on a list of delinquent debtors.

(4) Mental suffering arising from alleged blackmail or attempted extortion, through threats of exposure by placing said lists in merchants' display windows and advertising the account for sale in the newspapers.

Defendant excepted to the petition on several different grounds, which will be discussed in their proper places, and these being overruled, answered, denying the alleged slander and libel. He, however, admitted his efforts to collect the debt, which he claims is still due and unpaid.

The case was tried on its merits, and plaintiff recovered judgment of defendant for the sum of $500, with legal interest from judicial demand. Defendant appealed, and plaintiff has answered, praying for an increase in the judgment to the amount originally claimed, to wit, $7,000.

### Exception as to Residence.

[1, 2] Defendant excepted on the ground that the petition did not state the residence of either plaintiff or himself. As to defendant, the exception is disposed of by quoting from paragraph I of the petition:

"That nine years ago your petitioner, Mrs. Cecile Tuyes, purchased certain secondhand fur-

niture from Loan J. Chambers, of lawful age, *and a resident of this city and state*," etc.

We think the court to which the petition was addressed could take cognizance of the name of the city and state in which it sits, and the use of the words "this city and state" could mean no other than the city and state in which it is drawn and presented. It was sufficient to inform both the court and the defendant that the city of New Orleans and state of Louisiana were intended.

As to plaintiff, it is true that she does not state her residence at the usual place in the petition, according to the customary form, but it is amply set out in other paragraphs thereof; for instance, in article III, the circular giving her address is annexed to and made a part of the petition, in article IV, where reference is made to "petitioner's residence on Thalia street," and in article X she sets forth the fact that she has lived in New Orleans all her life. While it would, perhaps, be better, as a matter of nicety of pleading, to set forth residence in the usual and customary manner, we know of no law which requires that this be done, and none has been cited.

The exception was therefore properly overruled.

### Exception of Vagueness.

[3] There is nothing in the record to inform us as to just what the views of the lower court were in passing upon this exception. On reading the petition, we are impressed that many parts of it might have been elaborated, so as to more fully inform the defendant as to the nature and character of the demand. Especially is this true of the items of damage. A lump sum of $7,000 is claimed, while the action is based upon separate and distinct acts, which would give rise to separate causes of action, and therefore separate liability. However, defendant had the right to urge such an exception in limine,

as was done, and to have plaintiff particularize, or to object to the introduction of evidence on the trial. Having urged the exception, and it having been overruled, proper general objection to testimony should have been urged at the inception of the case. Not having done so, and the proof on practically all scores having been admitted without objection, the effect was to amend the pleading, the same as if it had been ordered by the court, and the exception was to that extent waived.

### Exception of No Cause of Action.

[4-6] Defendant contends that, because the petition does not state in so many words that plaintiff was injured by loss of the esteem of other persons, it does not disclose a cause of action; that the action is one in its nature for injury to reputation, and reputation is injured only to the extent that others are induced to think ill of one. He cites 25 Cyc. p. 249. An examination of that work on this and succeeding pages, with the authorities cited, discloses the legal principle that there are two species of injury which flow from slander or libel—the one resulting from the very nature of the words or writing, in certain cases, in which the law presumes injury; and the other known as special damages, which must be alleged and proved. Conceding that plaintiff's demand falls within the latter class, necessitating allegation and proof, we find, on reading the petition as a whole, sufficient charges of this character are made to relieve it of the effects of such a plea. After setting out the various acts of defendant in other parts of the complaint, in article VII we find the following:

"That she has almost had nervous prostration on account of his actions towards her, as she is ashamed to go out in the street in her neighborhood, and fears to meet any of her friends, knowing as she does that the said Loan J. Chambers has endeavored, by every manner in his power, to injure, harass, persecute and torment her, by letting everybody possible be-

lieve that she owes him thirty-two dollars and seventy-five cents ($32.75) and refuses to pay same."

While the language could have been stronger, we think the fair inference is that the people in her neighborhood have been induced to believe that she is trying to avoid and refuses to pay an honest debt.

[7, 8] Such charges, when made orally, give rise to special damages, which must be alleged and proven, yet, when made in writing and published, they become actionable per se. 25 Cyc. p. 258; Morgan v. Andrews, 107 Mich. 33, 64 N. W. 869; Davis v. Hamilton, 85 Minn. 209, 88 N. W. 744; Mertens v. Bee Pub. Co., 5 Neb. (Unof.) 592, 99 N. W. 847; Sanders v. Hall, 22 Tex. Civ. App. 282, 55 S. W. 594; Muetze v. Tuteur, 77 Wis. 236, 46 N. W. 123, 9 L. R. A. 86, 20 Am. St. Rep. 115. The alleged lists or circulars do not state in so many words that plaintiff is a "deadbeat," or is seeking to avoid a just debt, but the logical result and intention was to convey that impression to the reader. "These accounts are guaranteed [by creditors] undisputed, correct and just" reads the list at one point, and although this language is used in connection with the call for bids, it but thinly disguises the real purpose of the entire plan.

There are other features of the petition which raise serious questions of actionable conduct, in addition to the technical charges of slander and libel. They smack of the elements of blackmail, which is severely denounced by our laws as a necessary felony. We quote:

"If any person shall knowingly send or deliver, * * * or shall cause to be received by another any letter, postal card, writing or printed matter, threatening to accuse him or her, or any member of his or her family, or to cause him or her, or any member of his or her family, to be accused of any crime, * * * or to charge him or her, or any member of his or her family, with any fault, infirmity or failing, or to publish or make known his or her faults, * * * or impair his or her good name, reputation, or credit, * * * with intent to extort money, goods, chattels, or any promise or obligations for the payment of money or the transfer or delivery of any money or other valuable thing whatsoever, * * * or if any person shall follow or pursue, or maliciously intrude himself or herself upon another at his or her house, place of residence, or at his or her place of business, * * * where she or he may be engaged or employed, or in any public street or public place, * * * shall be imprisoned at hard labor for not less than one year nor more than twenty years, and shall be fined not exceeding two thousand dollars," etc. Marr's Rev. Stat. vol. 1, p. 561, § 1699 (Act 110 of 1908, p. 166).

[9, 10] It makes no difference that the money sought to be extorted was legally due. State v. Logan et al., 104 La. 760, 29 South. 336. We recognize the principle of law that the violation of a penal statute does not give rise to a private action, unless the complainant has suffered some special injury different from that inflicted upon the general public; yet if there be such special injury, and it is of a kind which the law can take cognizance of, the right to recover follows. Sutherland on Damages, vol. 1, p. 11, § 4; 9 L. R. A. (N. S.) 338 (extended note); L. R. A. 1915E, p. 500 (supplemental note).

[11, 12] This brings us to the question of mental suffering, for when the object sought is not accomplished that is the only kind of injury which could flow from blackmail or extortion, unless it be accompanied by some act of personal violence, when it would lose its character as such, and partake of the elements of robbery. What we shall have to say on this score, in so far as the same is applicable, may be considered in connection with the question of damages through mental suffering under the claims of slander and libel. The weight of common-law authority seems to be against a recovery for mental suffering or injury to feelings (when unaccompanied by any physical injury), such as shock, fright, etc., or for worry over dam-

age to any personal or property right; but our law of torts is found principally in the Civil Code, particularly article 2315, taken from the civil law, and which does recognize a right of action for such injuries. In the case of Graham v. Western Union Tel. Co., 109 La. 1069, 34 South. 91, Mr. Justice Nicholls, as the organ of the court, said:

"It is useless for us to refer to decisions of courts exercising functions where the common law prevails upon a subject-matter in regard to which we have to be controlled by local law. In France, not only do material injuries furnish ground for legal actions for redress, but so, also, do what are referred to there as 'moral injuries.' The doctrine rests there upon jurisprudence. In Louisiana it rests upon positive statute. Article 1382 of the Code Napoléon, which relates to offenses and quasi offenses, corresponds to article 2315 of our Civil Code," etc.

He then quotes at length from the French authorities. That was a case in which the plaintiff sought to recover damages for the failure to deliver a telegram advising her (a mother) of the serious illness of her son, and her consequent inability to reach and be with him prior to his death. It was a claim purely for "mental pain and anguish," since there was no privity of contract between plaintiff and the telegraph company; she not having sent the telegram herself. The district court had given judgment for $250, the case was appealed to the Court of Appeal, which reversed the lower court and sustained an exception of no cause of action, and was before this court on writs of certiorari and review. The judgment of the Court of Appeal was reversed, and the case remanded to be decided upon its merits. Again, in the case of Martin v. The Picayune, 115 La. 979, 40 South. 376, 4 L. R. A. (N. S.) 861, the same distinction between the civil and common law is pointed out.

If a recovery may be had for mental suffering growing out of cases of the character above mentioned, then why should the victim of blackmail or extortion not have the same right, when it is considered that the illegal act has for its main object the bringing about of such a mental condition as will induce compliance with the unlawful demand? The statute was passed for the specific purpose of protecting that mental equilibrium and peaceful enjoyment of one's own which should be accorded every one by his fellow man. Besides, the right to so enjoy the fruits of one's own labor is a species of property, which is destroyed by such illegal efforts to deprive him thereof, and to that extent, at least, he suffers an actual injury. See article 460, R. C. C. The violation of this law does not affect the public at large, except to the extent that the violation of any criminal law may be said to injure society as a whole; but its effects upon the individual against whom the acts are directed are immediate and serious. The damage is special.

The lower court did not err in overruling the exception of no cause of action.

## On the Merits.

We have found it necessary to discuss most of the questions of law involved in this case in passing upon the exceptions, and will therefore proceed to a discussion of the record on the four grounds of complaint mentioned in the beginning of this opinion.

[13, 14] As to the charge of insulting and defamatory remarks made at King's grocery store, we think that plaintiff has failed to discharge the burden of proof imposed by the law. She affirms, and defendant denies, the use of the offensive language, while King, the only other person proved to have been present, corroborates defendant, or, at least, did not hear the remarks. There was, therefore, no publication, in the sense that no third person heard the slanderous words. Even if defendant did say that plaintiff owed him a certain amount, or asked her to pay it in the presence of others, and used no oth-

er defamatory or derogatory remarks, he would undoubtedly have the right to prove the truthfulness of his statements. Revised Statutes (Marr's) § 6779, p. 2400, vol. 3, tit. "Slander and Libel." We think the evidence preponderates in favor of plaintiff owing the debt, although it had prescribed, and the defendant has made out his defense on that score.

[15] With regard to the alleged remarks made to plaintiff's daughter, Mrs. McCann, on Melpomene street, the same are denied in toto by the defendant and sworn to by Mrs. McCann alone, with no corroborating circumstances, save such as may result from the general course of conduct of the plaintiff in this case. We, of course, did not see and hear the witnesses testify, and consequently are not in a position to judge of their veracity, and, not having the advantage of knowing upon what theory or features of the case the lower court allowed a recovery, we must assume that, wherever the question of the weight of evidence was involved, he found it in favor of plaintiff, unless, as in the first item above discussed, we are convinced of the contrary by the record itself. We therefore conclude that this charge was sustained.

[16, 17] Items 3 and 4 are necessarily interwoven, and we shall discuss those together. The publication of plaintiff's name on the list of delinquent debtors was but a part of the plan to extort from her the money which defendant contended was due. 'It was intended to impute to her an unwillingness and refusal to pay her just debts, and to destroy that reputation for integrity and fair dealing which every one is presumed to have until the contrary is shown. It was not necessary that the document make the specific charge in so many words, but was sufficient, if by fair implication and reasonable interpretation it had that effect. Covington v. Roberson, 111 La. 326, 35 South. 586. When printed and published, the libelous matter became actionable per se. 25 Cyc. p. 258. There was sufficient publication through the issuance, handling and mailing by the collection agency, in the manner disclosed in the record. The manager of that · concern testified that both it and the defendant mailed to plaintiff the first and second demands, as well as the list of delinquents. We are convinced that the whole was a general scheme to force plaintiff to pay money, by threatening to humiliate her through public exposure, and that this was the underlying basis of the system about which this witness testifies. The threats to place the lists in merchants' display windows, and to advertise for sale, etc., could have but one purpose, and that is to, through fear, induce the payment of money which could not otherwise be collected.

On the whole, we think the case is sufficiently proven against defendant, and that the amount allowed by the lower court was correct. Let it be understood that we do not hold that creditors have not the right to use all legitimate means to collect their just accounts. The law points out those methods. The insolvency of the debtor is a proper matter for consideration when the credit is extended.

For the reasons assigned, the judgment of the lower court is affirmed, with costs.

O'NIELL, J., takes no part, not having heard the argument.

On Application for Rehearing.

DAWKINS, J. Rehearing denied.

PROVOSTY, J. (dissenting in part). I respectfully dissent from the proposition that the uncorroborated testimony of plaintiff's daughter, contradicted by the testimony of defendant, defendant being unimpeached as a witness, but his t. .imony being, on the contrary, fair on its face, is sufficient proof

of slander, even though the trial court should have found it so—a fact on which this court, in the absence of any reason for judgment by the trial judge, is not advised.