MARCUS, Judge.
Plaintiff-Appellant, Mervyn E. Everett, individually, and in his capacity as administrator of the estate of his wife, Eva Pitts Everett, has taken this appeal from a judgment of the 19th Judicial District Court, Parish of East Baton Rouge, rendered on July 2, 1968 and signed on July 17, 1968, in favor of defendants-appellees, Community Credit Company of Scenic, Inc., and Alan Corporation of Baton Rouge, (hereinafter sometimes called “finance companies”) rejecting the plaintiff’s demands and dismissing the suit at plaintiff’s costs. Mervyn E. Everett and Eva Pitts Everett were delinquent on loans which they had made with defendant finance companies. Attempts by employees of defendants to collect these debts resulted in the instant litigation. Initially, suit was brought on September 17, 1965 by Eva Pitts Everett against defendants in which it was alleged that she sustained a heart attack and resulting poor health due to the harassing collection activities of the defendants’ agents. Specifically, she alleged that her heart attack was precipitated by an incident occurring on September 18, 1964, involving one of defendants’ representatives, Gordon Lloyd.
The defendants filed a peremptory exception of one year prescription to plaintiff’s petition. The defendants contended that if any incident had in fact occurred, which incident was specifically denied, it had actually transpired on September 14, 1964, more than one year prior to the filing of the suit by plaintiff. This exception was referred to the trial on the merits. Thereafter, defendants filed an answer denying the allegations of the plaintiff’s petition and reserving all rights under their peremptory exception of prescription previously filed.
The plaintiff’s petition was amended on May 9, 1967 to include a claim on behalf of Mervyn E. Everett, as representative of the community of acquets and gains, for past and future medical expenses incurred by his wife, Eva Pitts Everett. On September 2, 1967, before trial on the merits was completed, Eva Pitts Everett died, and a supplemental petition was filed on December 27, 1967 in which Mervyn E. Everett was substituted as administrator of her estate. The supplemental petition sought additional damages for Mervyn E. Everett for loss of affection due to his wife’s death and reimbursement for her funeral expenses. Defendants again denied all allegations of the petition and reurged the exception of prescription.
The trial judge, at the conclusion of the trial and upon hearing all the evidence, and for written reasons assigned, held that the incident involving Eva Pitts Everett and the defendants’ representative, Gordon Lloyd, had occurred on September 18, 1964, and overruled the defendants’ plea of prescription. No useful purpose would be served by either reviewing in detail the testimony on this point or setting forth the trial judge’s reasons for his conclusions. It will suffice to say that we concur in his findings and affirm the over *147 ruling of defendants’ exception of prescription.
The next question for our determination is whether the trial court was correct in its decision on the merits.
Plaintiff in substance contends that his deceased wife, Eva Pitts Everett, was harassed by representatives of defendant finance companies in their efforts to collect a past due indebtedness owed by them to said companies. The only evidence presented on this point was the testimony of Eva Pitts Everett, Mervyn E. Everett, and plaintiff’s twelve year old son, Mervyn Henry Everett, which testimony was so vague and indefinite that this Court is unable to accept the facts to have been proven by a preponderance of the evidence. The main thrust of plaintiff’s contention involves the incident which occurred on September 18, 1964, in which it is alleged that a representative of defendant finance companies entered the home where his wife was ill in bed, despite the protest of his twelve year old son, and invaded Mrs. Everett’s bedroom and demanded information concerning Mr. Everett’s whereabouts. It is further contended that despite Mrs. Everett’s pleas for him to leave, the said representative remained, and continued to interrogate her, and only after a prolonged period of approximately one-half hour did he finally leave. It is further alleged that as a result of this episode, Mrs. Everett became emotionally upset which resulted in a heart attack and on that night was brought to Our Lady of the Lake Hospital. The next day she was taken to Lallie Kemp Charity Hospital where her condition was diagnosed as an acute posterior myocardial infarction. Mrs. Everett ultimately died as a result of this condition some three years later on September 2, 1967. The plaintiff’s case concerning this element of the action was the deposition of Mrs. Everett, supported by the testimony of her twelve year old stepson, Mervyn Henry Everett, her sister-in-law, Mrs. Madeline Murphy, and her niece, Miss Robin Nell Worthington. Mervyn Henry Everett testified that about three o’clock in the afternoon on September 18, 1964, he was at home with his mother. He asserted that a “blond-headed guy” who worked for Community Credit came by to talk to his mother who was sleeping in her bedroom; that this man entered the house and went into his mother’s bedroom where he remained for about twenty minutes, despite her request that he leave. He further testified that he remained in the bedroom with the visitor and his mother during the entire incident and at no time did the visitor raise his voice, intimidate or threaten his mother. Apparently, the only notable statement by the visitor to Mrs. Everett was that “he didn’t believe her.”
Mrs. Madeline Murphy and her daughter, Miss Robin Nell Worthington were in the kitchen at the Everett residence on the afternoon when the representative from the defendant finance companies arrived. They asserted that Mrs. Everett was not feeling well and was lying down in her bedroom which was located in close proximity to the kitchen. Mrs. Murphy testified that she heard the man arrive and then proceed into the bedroom despite the fact that he was told that Mrs. Everett was lying down and not feeling well. She further testified that he remained for a period of approximately 15 to 30 minutes. They both indicated that they did not hear the conversation except for the request for him to leave. They admitted that they did not hear the visitor raise his voice, intimidate or threaten Mrs. Everett in any manner and that he talked in normal tones during his entire stay. They further indicated that while Mrs. Everett was upset when the visitor left, she calmed down shortly thereafter and was asleep when they left a short while later.
The defendants’ case in chief consisted of the testimony of Gordon Lloyd, taken by deposition, and Edward David Sledge. Gordon Lloyd asserted that he was employed from May, 1964 to February, 1965 as a collector for defendant finance companies. He testified that the first day on *148 which he worked the collection of the Everett account was September 11, 1964. Referring to ledger cards, which were introduced into the evidence, he stated that he visited the Everett house on three occasions during the latter part of September, 1964; however, he only recalled going into the house on one of these occasions. As previously indicated, we concluded that the incident complained of occurred on September 18, 1964; therefore, this was apparently the day on which he went into the Everett house. He testified that he was given permission by Mrs. Everett’s stepson to enter their premises. Upon entering Mrs. Everett’s bedroom, he noted that she was in bed. He testified that he did not harass, threaten or intimidate her. He further testified that he remained only fifteen minutes and upon being requested to leave he complied. He further stated that Mrs. Everett did not appear to be in any distress on his departure.
Edward David Sledge testified that from November, 1963 until February, 1966, he was employed by defendants. He indicated that prior to September 10, 1964, he had worked the account owed by Mervyn E. Everett and after December, 1964, he resumed working the account. He asserted that only on one occasion had he gone to the Everett residence and when asked to leave by Mervyn E. Everett he immediately did so. He testified that he had never entered the Everett home.
The trial judge in finding that defendants had not breached any legal duty or obligation owed to Mrs. Everett expressed his conclusions as follows:
“Frankly, the Court cannot single out Mr. Lloyd’s actions in this matter for condemnation. While admittedly the red carpet was not rolled out for him, the Court believes that Mr. Lloyd was granted access to Mrs. Everett’s room for the purpose of seeing her. There is no evidence whatsoever from Mrs. Everett or any witness which indicates he used loud or abusive language towards Mrs. Everett or that his conduct was offensive in any manner. If he was guilty of any transgression, it was that he remained longer than necessary considering Mrs. Everett’s obvious illness.”
We concur in these findings by the trial judge.
Our courts have long recognized the right of a debtor to be free from unreasonable coercion and unreasonable violation of the right to privacy in personal affairs. In the recent case of Boudreaux v. Allstate Finance Corporation, 217 So.2d 439, 444, (La.App. 1st Cir., 1969), this Court stated:
“Irrespective of whether the right to freedom from excessive unreasonable, deliberately-induced emotional distress is predicated upon invasion of privacy or the closely allied tort of intentional infliction of emotional distress, see Wex S. Malone, Louisiana Law Review, Volume XXV, efforts to coerce payment of debt, Page 341, is actionable under our laws when the creditors, in an attempt to collect a debt justly due, unreasonably coerces the debtor or seriously abridges the obligor’s right to privacy in his personal affairs. Tuyes v. Chambers, 144 La. 723, 81 So. 265; Quina v. Roberts, La.App., 16 So.2d 558; Pack v. Wise, La.App., 155 So.2d 909.”
In that case, the Court recognized that a creditor may indulge in reasonable means to collect his accounts and that repeated requests for payment do not per se constitute harassment; nevertheless, the defendant in that case clearly exceeded the bounds of reason. In the instant case, the main thrust of plaintiff’s case on harassment and invasion of privacy was the intrusion of Mr. Lloyd into the residence of plaintiff over the objection of his son. In view of our concurrence in the findings of the trial court that “while admittedly the red carpet was not rolled out for him, the Court believes that Mr. Lloyd was granted access to Mrs. Everett’s room for the purpose of seeing her,” we find no trespass or unlawful entry of the plaintiff’s premises. *149 Furthermore, we do not find that plaintiff has proven by the preponderance of the evidence any unreasonable coercion, harassment, or abridgment of Mrs. Everett’s right to privacy in her personal affairs. Accordingly, we conclude that defendants-appellees did not breach any of the legal duties or obligations owed to Mrs. Everett. The facts of the Boudreaux case are clearly distinguishable from the case at bar.
In view of these conclusions, we find no need to discuss the cause-in-fact of plaintiff’s alleged damages. However, assuming for the sake of argument that the acts of defendants-appellees’ agents constituted a breach of some legal duty owed Eva Pitts Everett, we conclude after a careful review of the record that the acts of defendants-appellees were not a cause-in-fact of the injuries claimed.
For the foregoing reasons, we affirm the judgment of the lower court and assess the costs of this appeal to plaintiff-appellant.
Affirmed.