JiPETERS, Judge.
This litigation began as a suit on a promissory note and for recognition of a mortgage filed by The Cadle Company against Betty Bradford Teasley.[1] Ms. Teasley reconvened for damages allegedly sustained because of The Cadle Company’s collection methods. After trial, judgment was rendered in favor of The Cadle Company and against Ms. Teas-ley for $585.56 together with $232.42 in accu *1364 mulated interest through December 7, 1994; for interest on the unpaid balance of the note at the rate of eighteen percent from December 8, 1994, until paid; for twenty-five percent of the unpaid balance and accumulated interest as attorney fees; and for recognition of a mortgage on certain immovable property located in Rapides Parish, 12Louisiana. Judgment on the reconventional demand was rendered in favor of Ms. Teasley and against The Cadle Company in the amount of $5,000.00. The judgment provided that each party would bear its own costs associated with the litigation. The Cadle Company has appealed.
DISCUSSION OF THE RECORD
In July 1986, Ms. Teasley entered into a contract with Southern Siding Company, Inc., wherein Southern Siding agreed to install siding on a house owned by Ms. Teasley. In exchange for the siding installation, Ms. Teasley agreed to pay Southern Siding a total of $8,783.40, payable over sixty months at the rate of $146.39 per month beginning September 1,1986. As security for the debt, Ms. Teasley executed a promissory note and mortgage on the property on which the siding was to be installed.
The security agreement was apparently assigned by Southern Siding to Central Savings and Loan Association, as Ms. Teasley timely paid Central Savings fifty-three monthly payments pursuant to the agreement. In March 1991, Ms. Teasley received a notice that Central Savings had become insolvent and that Resolution Trust Corporation had been appointed receiver of the failed savings and loan. According to Ms. Teasley, the notice informed her that she would be receiving payment coupons informing her as to where the payments should be sent. She received two coupons from Resolution Trust and immediately returned each coupon with a payment of $146.39. These payments would have brought the account current through March 1, 1991. When Ms. Teasley did not receive another coupon during the month of March, she forwarded another payment on April 1, 1991, to the Central Savings and Loan Association address and requested that the savings and loan forward the payment to the appropriate payee.
IsMs. Teasley testified that after consulting with her husband, she decided not to send another payment until she heard from the proper authority, as she did not wish to pay the incorrect payee. According to Ms. Teas-ley, the next time she was contacted by anyone concerning the obligation was in July 1994, or over three years later. On that day, Ms. Teasley received a telephone call at her place of employment from a Mr. Jon Gluck-ner, who claimed to be a representative of The Cadle Company and inquired as to why Ms. Teasley had not paid her debt. Ms. Teasley informed Mr. Gluckner that her brother lived in the family home and that if there were any unpaid debts, her brother would be willing to pay them. Ms. Teasley then gave Mr. Gluckner her brother’s telephone number and considered the matter closed.
According to Ms. Teasley, she heard nothing else concerning the debt until October 1994, at which time Mr. Gluckner again telephoned her at her place of employment. The next time Mr. Gluckner called Ms. Teasley was on December 7, 1994, and again, this telephone call was at Ms. Teasley’s place of employment. At this time, Mr. Gluckner informed Ms. Teasley that although he had contacted her brother and her brother had agreed to pay the debt, Mr. Gluckner had not received payment, and he inquired as to what she was going to do about the obligation. Ms. Teasley testified that when she again suggested that he contact her brother, Mr. Gluckner became very abusive. He inquired as to whether she had ever had any garnishments against her, and when she answered in the negative, he responded in words to the effect that she was soon to have her first. As to the remainder of the conversation, Ms. Teasley testified as follows:
He said you remember what color you are. He said'you are a nigger and I am a white boy. He said and anything I send those stupid Southerners down South, they will believe when a Northern white man tell [sic] them down there.
According to Ms. Teasley, Mr. Gluckner telephoned again just before Christmas of 141994, *1365 again threatening her and stating “he would not only take my mom and dad’s furniture, that he would take my house and that he would even take my dog if necessary.” Ms. Teasley’s husband, Jack Teasley, Jr., testified that after one of the telephone calls to his wife, he called Mr. Gluckner and requested that Mr. Gluckner supply them with something in writing certifying that the amount was owed. According to Mr. Teas-ley, Mr. Gluckner told him the affair was none of his business, requested that Mr. Teasley not harass him on the job, and hung up.
Ms. Teasley contends she has suffered severe emotional distress as a result of Mr. Gluckner’s activities. She asserts that at trial she was still upset and that the experience affected her job performance as well as her physical and emotional well-being. Mr. Teasley confirmed that his wife was deeply disturbed by the telephone calls from Mr. Gluckner.
There is no dispute over the fact that Mr. Gluckner was acting on behalf of The Cadle Company, and no evidence was presented in rebuttal to that presented by Ms. Teasley. The trial court obviously accepted Ms. Teas-ley’s testimony in awarding damages. This appeal was perfected by The Cadle Company as to that issue only.
OPINION
In rendering judgment in favor of Ms. Teasley, the trial court stated only that it found that The Cadle Company “used unreasonable tactics to recover [the] debt.” The trial court obviously accepted Mr. and Ms. Teasley’s uncontradicted testimony concerning the incidents in question, including Mr. Gluckner’s use of the offensive language credited to him in the telephone conversation of December 7, 1994, and concerning damages. It is also apparent that the trial court found that Mr. Gluckner was acting in the course and scope of his employment with The Cadle Company.
Whether or not a debt is justly due, the debtor has a right to be free from Isunreasonable coercion and from unreasonable violations of his right to privacy in his personal affairs, and the debtor is entitled to general and special damages in tort for violations of his rights in these regards. Pack v. Wise, 155 So.2d 909 (La.App. 3 Cir.), writ refused, 245 La. 84,157 So.2d 231 (1963). In Boudreaux v. Allstate Fin. Corp., 217 So.2d 439, 444 (La.App. 1 Cir.1968), the court stated:
Irrespective of whether the right to freedom from excessive unreasonable, deliberately induced emotional distress is predicated upon invasion of privacy or the closely allied tort of intentional infliction of emotional distress, see Wex S. Malone, Louisiana Law Review, Volume XXV, efforts to coerce payment of debt, Page 341, [sic] is actionable under our laws when the creditors, in an attempt to collect a debt justly due, unreasonably coerces [sic] the debtor or seriously abridges [sic] the obli-gor’s right to privacy in his personal affairs. Tuyes v. Chambers, 144 La. 723, 81 So. 265 [(1919)]; Quina v. Roberts, La. App. [Orl.1944], 16 So.2d 558; Pack v. Wise, La.App., 155 So.2d 909.
Basically, the courts must balance the right or interest of the creditor to use reasonable collection efforts against the right of privacy enjoyed by a debtor, and “[r]esolution hinges upon when and if the conduct and communications of the creditor becomes [sic] unreasonable and intentionally coercive.” Ford Motor Credit Co. v. Diffey, 378 So.2d 1032, 1034-35 (La.App. 2 Cir.1979), writ denied, 381 So.2d 508 (La.1980).
The trial court concluded that The Cadle Company’s collection efforts through Mr. Gluckner constituted unreasonable tactics. This finding of fact must be reviewed under the manifest error standard. See Rosell v. ESCO, 549 So.2d 840 (La.1989). We do not find that the trial court’s findings were clearly wrong in this regard.
The Cadle Company next argues, in the alternative, that the damages awarded were excessive. In Youn v. Maritime Overseas Carp., 623 So.2d 1257, 1261 (La.1993), cert. denied, — U.S. —, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), our supreme court stated:
[T]he discretion vested in the trier of fact is “great,” and even vast, so that an appel *1366 late court should rarely disturb an award of general damages.... It is only when the award is, in either direction, beyond | gthat which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
We find no abuse of the trial court’s discretion in awarding Ms. Teasley $5,000.00 in general damages.
DISPOSITION
For the foregoing reasons, we affirm the judgment of the trial court. We assess costs of this appeal to The Cadle Company.
AFFIRMED.

. At the time the original note was signed, the defendant signed it as Betty Bradford Hobbs. Since that time, she has married Jack Teasley, Jr. We will refer to her in this opinion as Betty Bradford Teasley or Ms. Teasley.