# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 03-0328

**JIMMIE HAIRFORD AND WAYNE HAIRFORD**

**VERSUS**

**CENTURYTEL, INC. & CENTURYTEL**
**OF CENTRAL LOUISIANA, L.L.C.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 02-3516-A
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## OSWALD A. DECUIR
### JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**


**J. Ransdell Keene**
**KEENE ASSOCIATES**
**Post Office Box 3097**
**Shreveport, LA 71133-3097**
**(318) 221-5770**
**Counsel for Plaintiff/Appellee:**
    **Jimmie Hairford**

**P. Scott Wolleson**
**The Boles Law Firm**
**P. O. Box 2065**
**Monroe, LA 71207**
**(318) 988-7114**
**Counsel for Defendant/Appellant:**
    **Centurytel, Inc.**
    **Centurytel of Central Louisiana, L.L.C.**

**DECUIR, Judge.**

Jimmie Hairford filed suit against CenturyTel, Inc. and CenturyTel of Central Louisiana, L.L.C. seeking damages for mental anguish suffered as a result of a dispute over his telephone bill. At the conclusion of a bench trial, Hairford was awarded damages in the amount of $4,500.00. CenturyTel filed the instant appeal and, for the following reasons, we affirm.

CenturyTel provided telephone service to Hairford for many years. In 1991, Hairford authorized CenturyTel to draft his checking account with Cottonport Bank for payment of his monthly bill. In March of 2002, Hairford received a letter from CenturyTel addressed to "Connie Sheehan Hairford," stating that her previous telephone number had been disconnected and that the remaining balance of $1,871.28 due on that account would be transferred to the active account bearing Jimmie Hairford's telephone number. CenturyTel's records indicated that Connie Sheehan had been an authorized user on Hairford's account since 1998. The records also indicated that she was his wife.

Hairford was outraged by the contents of this letter and called CenturyTel immediately. He spoke to Melinda Campbell, who had written the letter, and informed her that he was not married to Connie Sheehan and he was not responsible for the overdue charges from her account. The testimony in the record reveals the conversation between Hairford and Campbell was heated, with Campbell asserting that Hairford had to somehow prove that he was not married and Hairford using inappropriate language. Subsequently, Hairford went to an attorney who wrote letters and made phone calls to CenturyTel on his behalf. Nonetheless, several weeks later, CenturyTel debited Hairford's account for the full amount of the debt; the charges were immediately reversed when the bank intervened.

At the time of trial, Hairford was a 75-year-old retired widower and a lifetime resident of rural Avoyelles Parish. He knew a woman named Connie Sheehan whom he sometimes employed to do odd jobs around his house and property. She was the daughter of some family friends, and he had known her since she was a child. At trial, Hairford acknowledged that Sheehan could have had access to his personal information such as his social security number, as he often left his wallet out on the table. At the time of this dispute, Sheehan had moved away from Avoyelles Parish and was not involved in this litigation.

Hairford testified that he was deeply upset about these events. He was embarrassed that he was thought to be married to a much younger woman. The overdue charges were from calls placed to a 900 number, which Hairford assumed were "dirty calls," although the record shows the calls were placed to a psychic hotline. Hairford testified he received prank calls asking about his "new wife" and friends teased him about the situation. Two witnesses corroborated Hairford's distress and mental anguish as a result of these events.

The record shows that Hairford's telephone protests over payment of the bill, as well as the calls and letters of his attorney, were to no avail. CenturyTel insisted, even at the time of trial, that Hairford was responsible for providing evidence that he was not married to Sheehan or that he had been the victim of a fraud. Consequently, CenturyTel did not investigate the matter, ignored Hairford's protests, and assumed the validity of the bill without question. The trial court found CenturyTel's actions amounted to "negligent, improper and unreasonable tactics [which] were employed in the collection of a debt that was not owed by the plaintiff." The record supports this finding.

In *Cadle Co. v. Hobbs,* 95-1639, pp. 4-5 (La.App. 3 Cir. 5/8/96), 673 So.2d 1363, 1365, this court explained:

> Whether or not a debt is justly due, the debtor has a right to be free from unreasonable coercion and from unreasonable violations of his right to privacy in his personal affairs, and the debtor is entitled to general and special damages in tort for violations of his rights in these regards. *Pack v. Wise*, 155 So.2d 909 (La.App. 3 Cir.), *writ refused*, 245 La. 84, 157 So.2d 231 (1963). In *Boudreaux v. Allstate Fin. Corp.*, 217 So.2d 439, 444 (La.App. 1 Cir.1968), the court stated:
>
> > Irrespective of whether the right to freedom from excessive unreasonable, deliberately induced emotional distress is predicated upon invasion of privacy or the closely allied tort of intentional infliction of emotional distress, *see* Wex S. Malone, [*Efforts to Coerce Payment of Debt*, 25 La.L.Rev. 341], is actionable under our laws when the creditors, in an attempt to collect a debt justly due, unreasonably coerces [sic] the debtor or seriously abridges [sic] the obligor's right to privacy in his personal affairs. *Tuyes v. Chambers*, 144 La. 723, 81 So. 265 [(1919)]; *Quina v. Roberts*, La.App. [Orl.1944], 16 So.2d 558; *Pack v. Wise*, La.App., 155 So.2d 909.

Essentially, we are called upon in this case to determine if the balance between the creditor's interest in using reasonable collection efforts and the debtor's privacy and emotional interests has been upset. The pertinent jurisprudence states, "Resolution hinges upon when and if the conduct and communications of the creditor become unreasonable and intentionally coercive." *Ford Motor Credit Co. v. Diffey,* 378 So.2d 1032, 1034-35 (La.App. 2 Cir. 1979), *writ denied*, 381 So.2d 508 (La. 1980). Louisiana law provides that "debt collection efforts, if extreme and outrageous, will support recovery for intentional infliction of emotional distress." F. Maraist and T. Galligan, Louisiana Tort Law, §§ 2-6(e), pp. 36-37, n.83 (1996).

Given the evidence in the record before us, and considering the particular facts of this case, such as the advanced age of Hairford and the fact that he was not the delinquent debtor, we find no manifest error in the conclusions reached by the trial judge. While some of the actions of CenturyTel may have been merely negligent, as

3

the trial court found, it is clear the actions complained of, which caused Hairford's distress, were improper and unreasonable, as the trial court also found, so as to be considered intentionally coercive. CenturyTel chose not to investigate Hairford's complaints, threatened to discontinue Hairford's telephone service, which had always been paid timely, and proceeded with drafting payment out of Hairford's bank account. Additionally, CenturyTel chose not to verify or seek approval for the addition of Sheehan as an authorized user on Hairford's account.

Considering the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are assessed to CenturyTel.

**AFFIRMED.**