Morris Dickson Company, Ltd., a wholesale establishment of Shreveport, Louisiana, owns the controlling stock in and has general supervision over nine other corporations operating in that city as retail drug stores; and it is through these that its merchandise is principally distributed. The officers of all the mentioned entities, including the parent organization, are identical.
On June 16, 1941, plaintiff, Joe R. Binnion, applied in writing to Morris Dickson Company, Ltd., for a position relating to fountain work in one of its retail places. He was immediately accepted and sent to store No. 2, known as Shreveport Drug Company, where he was to and did assist the fountain manager until a better position was available.
Later store No. 1, or M. D. Drugs, Inc., which is one of the subsidiary corporations and the defendant in this suit, needed a soda fountain manager or operator, so plaintiff was assigned there. He commenced serving in such capacity on June 30, 1941. His salary was fixed at $120 per month, payable on the 1st and 15th of each month. Also, on the 15th day *Page 308 
of each month he was entitled to receive a bonus computed upon the gross profit earned by the fountain during the previous month, provided the profit exceeded a certain amount.
Plaintiff regularly received his salary up to October 1, 1941, as well as his earned bonus for the months of July and August of that year. At the commencement of the work day of October 6, 1941, without having received previous notice, plaintiff was discharged by the manager of store No. 1, the defendant corporation; and it was not until October 8, 1941, that he was paid the salary for the five days of actual work in October plus the bonus for the preceding month of September.
This suit followed. In it plaintiff invokes the provisions of Civil Code, Article 2749 and claims a salary and a prospective bonus for the remainder of the month of October, contending that he was working under a monthly employment contract. Also he avers defendant's violation of Act 138 of 1936, by failing to make timely payment of the amount due him, and asks to be awarded continuing wages and attorney's fees under the penal terms of that statute.
The defense is that plaintiff was employed for an indefinite period of time; that he was discharged for cause, having willfully committed various and numerous acts of insubordination which interfered with the proper management of the store; that the delay in paying plaintiff the amount owing was necessitated by the computation of his bonus for the month of September, to which delay he agreed.
There was judgment rejecting the demands of plaintiff and dismissing the suit; and from it he appealed.
It is stated in Civil Code, Article 2749, relied on by plaintiff, that: "If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived."
Recovery under the quoted codal provision, of a salary and a prospective bonus for the portion of October, 1941, following plaintiff's discharge, is authorized only in the event that he was employed for the entirety of that month and, further, that he was sent away without any serious ground of complaint.
The litigants, according to the evidence, did not expressly agree on a definite time of employment or that it should be on a month to month basis.
It seems to be the well settled law that where no definite term is expressed, as in this case, the duration of the relationship "is dependent upon the understanding and intent of the parties, to be ascertained from their written or oral negotiations, the usages of business, the situation and object of the parties, the nature of the employment, and all the circumstances surrounding the transaction." 35 American Jurisprudence verbo Master and Servant Section 19.
Furthermore, a doctrine that has been recognized and approved in the jurisprudence of this state is, as found in 39 Corpus Juris verbo Master and Servant Section 18, the following: "In the absence of custom, or of facts and circumstances showing a contrary intention on the part of the parties, it is generally held that the fact that a hiring is at so much per day, week, month, quarter, or year, raises no presumption that the hiring was for such a period, but only at the rate fixed for whatever time the party may serve, * * *."
See Russell v. White Oil Corporation, 162 La. 9, 110 So. 70; Fletcher v. Crichton, 183 La. 551, 164 So. 411; Flournoy v. City of Shreveport, La.App., 170 So. 264.
The evidence does not disclose the existence of a custom, and we know of none, whereby the manager or operator of a soda fountain is usually hired on a monthly basis. Neither can it be said that the nature of the business required such an employment. There is an important circumstance favoring plaintiff's contention, it being the fact, as before shown, that he received a monthly salary of $120. But this alone is not conclusive in determining the duration of the relationship, for, as the trial judge points out in his written opinion, "there is considerable difference between being paid by the month and being hired for a month"; and too, it may be observed such salary was received semi-monthly rather than monthly.
Another established fact exists, however, that outweighs and overcomes the mentioned favorable circumstance, and it is *Page 309 
one which, we think, indicates the intention of the parties. In his written application of June 16, 1941, which immediately preceded the commencement of his work and was the basis therefor, plaintiff stated: "I understand that if I am accepted for employment such employment may be terminated at any time without previous notice, all wages to cease at the time of such termination."
The offering in evidence of this signed application was objected to by plaintiff's counsel on the ground that it was directed to store No. 2, a distinct legal entity which is not a party to the suit, and not to this defendant. The objection was overruled, and we think correctly so. It is true that on the application, following the printed words "Name of Store," is the penciled notation "No. 2". But this notation, so the evidence shows, was placed there after plaintiff was first assigned to store No. 2. As was customary and proper, the application was filed with the parent organization; and it affected all of the nine retail stores including the defendant corporation.
As the application indicates strongly that no monthly employment was intended, and there being no facts or circumstances proving a contrary intention, plaintiff was dischargeable at the will of his employer. This conclusion makes unnecessary a consideration of defendant's contention that the discharge was for cause.
Act 138 of 1936, which plaintiff charges was violated by defendant, severely penalizes an employer on failure to pay a discharged or resigned employee the amount due him within 24 hours after the discharge or resignation and after proper demand is made therefor. This statute affords a harsh remedy and it must be strictly construed. Moreover, the penalties therein provided will not be imposed where there is a strong equitable defense.
When the discharge occurred on October 6, 1941, there was due and owing to plaintiff, besides the five days' earned salary, his bonus for September. This bonus had not then been computed because of the unavailability of certain necessary records. The store manager testified that he informed plaintiff that the computation would require several days, and when it was completed the salary plus the bonus would be paid, to which plaintiff agreed. The latter did not specifically deny having made the agreement. On October 8, 1941, payment of both was made.
The trial judge, on this phase of the case, observed that "the evidence when fairly considered, shows that plaintiff agreed with defendant to wait until his accounts could be checked before payment was to be made. The agreement having been made, plaintiff is not at liberty to repudiate the agreement, and sue for the penalty provided in the act."
The announced finding of fact that such an agreement existed is supported by the record; and, this being true, an equitable and a meritorious defense is made to the charge that defendant violated the provisions of the mentioned statute.
We find no error in the judgment appealed from and it is affirmed.
DREW and TALIAFERRO, JJ., concur.