220 So.2d 758 (1969)
John Robert PASSMAN
v.
COMMERCIAL CREDIT PLAN OF HAMMOND, INC., et al.
No. 7597.
Court of Appeal of Louisiana, First Circuit.
March 10, 1969.
Rehearing Denied April 14, 1969.
Duncan S. Kemp, III, of Reid & Macy, Hammond, for Commercial Credit Plan of Hammond, Inc.
Iddo Pittman, Jr., of Pittman & Matheny, Hammond, for Smith.
L. Barbee Ponder, Jr., of Ponder & Ponder, Amite, for appellee.
Before LOTTINGER, ELLIS and BAILES, JJ.
LOTTINGER, Judge.
This is a suit filed by John Robert Passman, as petitioner, against Commercial Credit Plan of Hammond, Inc., hereinafter referred to as Commercial, and its employee, G. B. Smith, for damages resulting from an alleged invasion of privacy of petitioner. The Lower Court awarded judgment in favor of petitioner and against defendants in solido, in the sum of $10,000.00, with legal interest from date of demand until paid, and for all costs. Both defendants have taken suspensive appeals.
The facts of this case, which are not in dispute, disclose that on August 10, 1964, petitioner negotiated a loan with Commercial in the sum of $2,809.44, payable in thirty-six monthly installments of $78.04 each. This loan was secured by a chattel mortgage on a 1962 Buick automobile. The principal amount of the loan included insurance and finance charges.
*759 Subsequently the petitioner became delinquent in his payments and suit was instituted on the note and chattel mortgage and the automobile was seized under a writ of sequestration. On November 16, 1965, judgment was rendered in favor of Commercial and against petitioner, J. R. Passman, as aforesaid. In this suit the petitioner was represented by the same attorney who represents him in the instant case.
On November 18, 1965, by agreement entered into between petitioner and Commercial, petitioner's father paid $1,000.00 to Commercial to be applied to the judgment, in consideration for which the automobile was released from seizure.
No further payments were made by petitioner toward liquidation of the judgment and some nineteen months later, on June 13, 1967, defendant, G. B. Smith, who was loan manager of Commercial, wrote the personnel officer at the East Louisiana Hospital at Jackson, where petitioner was employed, as follows:
"Dear Sir:
According to information we have received, the above mentioned Mr. Passman is an employee of the East La. Hospital.
We have been awarded a judgment in the amount of $1564.82 plus 8% interest plus 25% attorney fee against Mr. Passman in the Tangipahoa Parish courts.
Since I am sure you prefer to avoid garnishment proceedings against employee of the East La. Hospital I am taking the liberty of giving you this information in the event you would want to consult Mr. Passman regarding this before garnishment proceedings are instituted.
In the event we have not heard from you or Mr. Passman within five days from the date of this letter, we will institute garnishment proceedings in our favor.
If you have any questions concerning this please do not hesitate to phone me here at the local office."
On July 7, 1967, petitioner's attorney wrote the attorney for Commercial inquiring as to the least amount which said company would accept in full payment of the judgment. Subsequently, on July 12, 1967, the petitioner's attorney again wrote Commercial's attorney offering to pay $1,500.00, in full settlement of said judgment. On July 14, 1967, Commercial's attorney wrote petitioner's attorney stating that no compromise could be made and the full amount was demanded.
Subsequently, on July 24, 1967, petitioner filed suit against defendants claiming that by virtue of the letter dated June 13, 1967, written by Mr. Smith to the East Louisiana Hospital where Passman was employed, he was damaged in the sum of $20,000.00. His damages are itemized as $5,000.00 for damages and invasion of privacy, $5,000.00 for writing and delivery and results of the letter, $5,000.00 for mental pain, shock, grief, and anguish, and $5,000.00 for injury to his reputation as an employee.
Subsequent to the institution of this suit a garnishment proceeding was formally filed with East Louisiana Hospital as garnishee for payment of the judgment.
Following trial of the case on the merits, the Trial Court rendered judgment in favor of petitioner and against defendants for $10,000.00. A motion for a new trial was denied below, and this appeal followed.
The defendants claim that the Lower Court erred in granting judgment in favor of petitioner on the facts as reflected from the record of this case inasmuch as the conduct of Mr. Smith in writing the East Louisiana Hospital was a reasonable effort to obtain collection of a valid debt.
The petition filed herein alleges that the said letter caused petitioner "* * * great damages by him being called into the office and given a severe tongue lashing *760 and reprimand, causing petitioner much concern to him on the status of his job; that he has been subjected to much ridicule, criticism and embarrassment designated to pressure him to leave the job in order for his employer to forego garnishment process as threatened."
The evidence, however, particularly the testimony of the petitioner himself, shows that such was not the case at all. The petitioner testified that following receipt of the letter by the personnel officer of the hospital, the assistant to the personnel officer, Mrs. Hudson, called him into her office to discuss the matter with him. He testified that all she wanted him to do was to attempt to straighten the matter out, that he did not get "a severe tongue lashing" but that she did remind him of the rule that on the second garnishment an employee would get fired. He testified that not threats were made to him, that they just wanted him "to do something about this judgment" and he assured them that he would. It was also testified by Mr. Broyles, the personnel manager, that although at one time it was the policy of the hospital to allow only two garnishments on any employee during a twelve month period, and if an employee received two, he was fired, this policy was not in effect on June 13, 1967, when the letter was written.
Mrs. Hudson testified that she was serving as assistant personnel officer at the time. She stated that the letter was handed her by Mr. Broyles for handling and that she handled it in the usual manner. She simply asked Mr. Passman to come to her office. She handed him the letter and asked him if he could take care of it. She talked to him in her private office, and she did not threaten him. She stated that there was no question about him losing his job. She gave him the original letter, kept no copy, kept no record of the transaction and had nothing more to do with it. She did not discuss the matter with him any further nor did she know of any discussion of the matter with any other persons in the hospital. Subsequently, the matter was all but forgotten by both Mr. Broyles and Mrs. Hudson.
The Lower Court based its holdings primarily on the decision in Pack v. Wise, La.App., 155 So.2d 909.
In the Pack case, the petitioner, who was the employee of a bank in Lake Charles, entered into a private venture whereby he intended to circulate certain commercial listings. Upon being instructed by an official of the bank that the bank did not approve of such practices on the part of its employees, petitioner saw fit to incorporate his business and take a minority share of the business. Previously, however, he had entered into negotiations with defendant, Mr. Wise, to have defendant print certain materials for him. The enterprise was unsuccessful and fell into financial difficulties and the obligation due Mr. Wise was not paid.
After attempting to have petitioner pay the bill without success, defendant wrote to petitioner's employer, in which Mr. Wise was a substantial depositor. In this letter he advised the President of the bank that he had been unsuccessful in collecting a past due bill in the amount of $920.00 from petitioner. The letter concluded: "We will greatly appreciate any assistance you may care to give us in securing payment so that we will not have to proceed further against Mr. Pack." In several confrontations, defendant had been advised by petitioner that he did not consider himself personally liable for the obligation and for this reason he refused to pay it.
Subsequent to the bank receiving the letter, petitioner was called into the office of the bank's executive Vice-President, to whom petitioner explained again that he did not consider himself personally liable. The President of the bank then wrote defendant a letter informing him of petitioner's contention, concluding that "If Pack misrepresented the facts, I would appreciate hearing from you further on the matter; otherwise, no action will be taken against Jimmy by this institution."
*761 Defendant then called the President of the bank and informed him of his version of the transaction. As a result, petitioner was again called in by the bank's executive Vice-President and told that the matter should be settled and that he did not want to hear any more about it. Petitioner then consulted with his attorney, who wrote defendant requesting that he cease communicating with his employer and advising that, if such communications continued, "then necessary legal proceedings will be instituted and [he] will be held financially responsible for all damages sustained."
After receiving this letter from petitioner's attorney, defendant took the letter to the bank President and petitioner was again called to the office and was obliged to participate in a face-to-face confrontation with defendant, the bank President and the executive Vice-President. As a result of this meeting, petitioner was immediately fired. Petitioner filed suit for damages against defendant and, on appeal, the judgment of the Trial Court was reversed and the Appellate Court rendered judgment in favor of petitioner in the sum of $5,000.00. In the Pack case, the Appellate Court said:
"Recently, where a creditor telephoned members of a debtor's family in an effort to coerce payment, the Supreme Court of Alabama held that such conduct constituted an actionable invasion of the debtor's right to privacy. Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321. The court reviewed the jurisprudence relating to the question fairly comprehensively, pointing out for example several decisions of other jurisdictions which had held that the mere contacting of a debtor's employer does not necessarily constitute an actionable tort.
The court held that a rule of reason should be adopted to balance the interest of the creditor in collecting the debt against the right of privacy of a debtor as to his own affairs. This rule the Alabama court summarized as follows, 132 So.2d 323, `"a creditor has a right to take reasonable action to pursue his debtor and persuade payment, although the steps taken may result to a certain degree in the invasion of the debtor's right of privacy," but that the debtor has a cause of action for injurious conduct on the part of the creditor which exceeds the bounds of reasonableness.'
Thus, assuming that the simple action of contacting a debtor's employer is not actionable in Louisiana as coercive in itself (but see Quina v. Roberts, La.App., 16 So.2d 558) it might well be argued that the defendant Wise's actions in writing the initial letter and in following it up with an explanatory telephone call in response to the bank's reply to his initial letter did not by themselves constitute conduct on his part unreasonably violating the plaintiff's right to privacy. However, we think that, in cumulation with his past conduct, Wise plainly committed an actionable tort when, in addition to the two prior contacts with the plaintiff's employer, he further brought to the bank's attention the letter to him of September 18th from the plaintiff's lawyer.
This letter expressly and formally informed him of the plaintiff's defense to any claim against him individually for the corporate debt, and it expressly informed him that the plaintiff did not desire any more intrusions by Wise into the relationship between the plaintiff and his employer. At the time he brought this letter to the plaintiff's employer, Wise was thus plainly put on notice that the plaintiff Pack felt he had a valid defense at law to Wise's claim that Pack was individually liable for the corporate debt. Instead of filing suit to secure a judicial adjudication of the validity of this defense, the creditor instead brought to the attention of Pack's employer the letter from Pack's attorney requesting the creditor to desist from further communications with Pack's employer about the matter.

*762 In doing so, we think Wise's conduct, in cumulation with his past efforts to secure the bank's assistance in collecting from an employee a debt he disputed as due, exceeded what might have been within reasonable bounds in communicating with the employer about its employee's private affairs. Wise's action in this regard constituted either an invitation to the bank to take disciplinary action against its employee for his securing the services of an attorney to prevent further repeated and continued harassment concerning the disputed debt through the creditor's contacting the employer; or else Wise's action may have constituted further action by Wise to coerce the payment of a debt which the employee felt he did not owe. In either event, Wise's conduct constituted an unreasonable violation of the plaintiff's right to privacy or a tortious attempt to coerce Pack into paying the disputed debtin short, the commission by Wise of a tort against Pack."
In commenting upon the Pack case, 28 Louisiana Law Review, 469, points out that Louisiana, along with many other States, has recognized the right of privacy which shows that the Louisiana Courts have distinguished between what the author calls "actual" and "actionable" invasion of the right of privacy. It is only those invasions that are determined "actionable" that recovery is allowed. The author examines the various Louisiana cases and concludes that this is an issue of reasonableness and it is only where the conduct is unreasonable and serious that there is actionable invasion of the right of privacy.
The writer places the Louisiana cases pertaining to invasion of privacy into three categories. One of these categories is debt collection and there follows a discussion of several cases in point. The author wrote:
"Debt Collection
In this area the courts clearly recognize a creditor's right to collect his debts legally due, but they have required that the collections be made in a reasonable manner. A creditor has been found guilty of an actionable violation of his alleged debtor's right of privacy when, after receiving a letter from the alleged debtor's attorney expressly informing him of a defense to the claim and that his client desired no more intrusion by the creditor into his employment relationship, the creditor subsequently brought such letter to the attention of the alleged debtor's employer. Plaintiff, who has lost $2,000 in earnings because of discharge from his employment, was awarded $5,000 for the creditor-defendant's invasion of his right of privacy. Apparently, the court found that the debtor's interest in being secure in his employment relationship outweighed any interest the creditor may have had in coercing payment of the disputed debt by exerting pressure on the debtor through his employer.

In a similar case, it was held that a creditor's sending a letter enclosing a "Final Notice Before Suit" requesting the debtor's employer's assistance in collecting the $1.45 balance of a debt was an unreasonable invasion of the debtor's privacy. The debtor was awarded $100 for his creditor's tort.17 Another debtor was awarded $500 for an actionable invasion of her privacy when a creditor had her name published on a list of delinquent debtors and threatened to advertise the list by displaying it in merchant's store windows.18 The court found the creditor's threat to be clearly coercive and, therefore, unreasonable.
On the other hand, a routine call by a creditor to verify employment and to ascertain the employer's policy toward garnishment has been held to be reasonable and, therefore, not an actionable invasion of the debtor's right of privacy.19 No actionable invasion was found when the creditor's agent inquired of the debtor's doctor whether he could speak with the debtor about her past due car notes while she was recovering from a heart *763 attack.20 The doctor refused the request and told the debtor's son, who later informed the debtor of the request. In denying the debtor a recovery, the court stated that no case in Louisiana or elsewhere has held that these facts or any similar thereto amount to an actionable invasion of the right of privacy.21" (La. Law Review, XXVIII, 472-473) (Emphasis ours.)
There are distinguishing differences in the degree of invasion of privacy in the Pack case and the suit before us. The Pack case concerned a disputed debt. There the creditor wrote the employer alleging the indebtedness and asking the employer to assist him in collection of the alleged obligation. The employee was called in by his superior upon receipt of the letter and the employee gave his employer his version of the matter. The bank then wrote the creditor explaining the employee's position to the effect that the employee did not owe the obligation and asked to hear further from the creditor. The creditor then telephoned the bank President and informed him of his version. After this the employee was called in again and the executive Vice-President told him that he had heard enough of the matter and that he wanted it settled. After this the employee engaged an attorney to write the creditor and told him to cease communicating with the employer and advised him that legal proceedings would be instituted if he continued. Upon receipt of this letter the creditor went to the bank and the employee was called in for a face-to-face meeting with the creditor and his superior officers which resulted in the immediate firing of the employee.
On the other hand, in the present suit the defendant had a judgment against the petitioner. The letter written by the defendant was merely advising the employer of the indebtedness and advising him that unless something was done that garnishment proceedings would be instituted. The indebtedness was of public record, and the creditor could have availed himself of his right of garnishment without so notifying the employer of the petitioner.
The general rule as set forth in 77 C.J.S. Right of Privacy § 2, Page 401, is as follows:
"It has been held that an employee has no right of privacy as against his employer in the matter of debts which the employee owes to third persons and * * * the creditor does not incur liability by communicating to the employer the fact of the existence of such debt, where the communication does not contain slanderous, libelous, defamatory or coercive matter, even though in the usual course of business, the communication may pass through the hands of other employees."
In 14 A.L.R.2nd, Anno-Right of Privacy, page 770, we find the following language:
"It is generally recognized that a creditor has a right to take reasonable action to pursue his debtor and persuade payment, although the steps taken may result in some invasion of the debtor's privacy. So it has been held that an employer may be informed of a debt owed by one of his workers."
In the Pack case, we believe that the Court clearly held that the defendant was unreasonable in pursuing the payment of the alleged indebtedness. Such is not the case in the suit before us. Here the employer was merely informed that the creditor had a judgment against the employee and that the creditor would take garnishment proceedings if the matter was not settled. No threats were made either by the creditor or the employer to his employee, and certainly no damages were caused the employee; who, at the time of the suit was still working for the same employer and had received a substantial raise in salary. We, therefore, feel that the invasion of privacy in the present suit was not an actionable one.
*764 For the reasons hereinabove assigned, the judgment of the Lower Court will be reversed and there will be judgment in favor of defendants and against petitioner, dismissing petitioner's demands. All costs of this appeal to be paid by petitioner.
Judgment reversed.