224 So.2d 512 (1969)
Walter Truitt BOOTY, Plaintiff-Appellant,
v.
AMERICAN FINANCE CORPORATION OF SHREVEPORT, J. R. King and Herb Epps, Defendants-Appellants.
No. 11228.
Court of Appeal of Louisiana, Second Circuit.
May 27, 1969.
Rehearing Denied June 26, 1969.
*513 Donald R. Miller, Shreveport, for plaintiff-appellant.
G. M. Bodenheimer, Jr., Shreveport, for defendants-appellants.
Before AYRES, BOLIN and PRICE, JJ.
PRICE, Judge.
Walter T. Booty brought this action in tort against American Finance Corporation, Herb Epps and J. R. King. Booty alleged defendants had invaded his right to privacy by using unreasonable and oppressive methods in attempting to collect an indebtedness owed by plaintiff.
During the year 1962 plaintiff filed a voluntary petition in bankruptcy and was granted a certificate of discharge by the Federal District Court, which included an obligation owing American Finance Corporation in the amount of $991.00. Subsequent to the discharge plaintiff began paying on the previous obligation to American, and on December 17, 1965, executed a promissory note in favor of American for the remaining balance of $700.58. This note was payable in monthly installments of $25.00 and bore interest from maturity only. Plaintiff paid on the note until the balance was reduced to the sum of $444.43. No payments were made on the note for a period of approximately sixteen months and on December 6, 1967, American Finance Corporation directed a letter to plaintiff's employer, Commonwealth Life & Accident Insurance Company, at their home address in St. Louis, Missouri, advising them of the status of plaintiff's account with American. The letter, signed by Herb Epps as manager, did not contain any insulting or defamatory remarks about plaintiff but merely advised Commonwealth of the facts of the situation and expressed appreciation for any assistance they would give in the matter.
During the months of January and February of 1968, the defendants proceeded to send a number of letters to plaintiff's employer, ostensibly for the purpose of keeping the employer informed of the status of plaintiff's account. Other than the referral to the date of the previous letter, all of the series of letters were worded identically and read as follows:
"AMERICAN FINANCE CORPORATION
 January 22, 1968
"Commonwealth Insurance Company 3500 Lindell Street St. Louis, Missouri
Gentlemen:
I hesitate to bother you again with respect to the account of your employee, W. T. Booty, but I feel you should know its present status.
Since the date of our last letter to you December 1967, we have received the following payment on this account:
 December 11, 1967Amt. $25.00.
"The present balance still amounts to $419.43 and the account is still very delinquent.
We will appreciate any further help you may render in this matter.
Sincerely yours,
Herb Epps Manager"
*514 Prior to the letters directed to the Home Office of Commonwealth, several letters were sent to the branch office in Shreveport, Louisiana. The manager of the Shreveport office, Don England, received several telephone calls from persons identifying themselves as connected with American Finance, soliciting his help in the collection of Booty's account. A carbon copy of a letter directed to Booty by an attorney, threatening the filing of suit, was also forwarded to the Home Office of Commonwealth on February 2, 1968. Instructions were received by the Shreveport office of Commonwealth from the Home Office to discuss the matter with Booty, to require him to take care of the matter and prevent any further letters from being sent to his employer.
Booty was told if the letters did not stop, he would possibly lose his job. During this same period of time Epps, King and other representatives of American Finance, contacted Mr. or Mrs. Booty, demanding payment of the account in full. Plaintiff advised Herb Epps, who was manager of American Finance at that time, that the letters to his employer were causing him to be in jeopardy of losing his job and requested that they desist from contacting his employer any further. Some of the letters were directed after this request was made.
On March 28, 1968, plaintiff filed suit against the defendants, asking that he be granted a judgment against them, in solido, for the sum of $278,344.00, itemizing his damages as follows:

A. For physical pain, suffering
 and mental anguish $12,500.00
B. For embarrassment and
 humiliation 12,500.00
C. For invasion of his right
 of privacy 12,500.00
D. Punitive damages 12,500.00
E. Loss of earnings, past and
 future 228,344.00
 ___________
 $278,344.00

Defendants filed an answer, denying liability, and American Finance filed a reconventional demand asking judgment be rendered against plaintiff in the sum of $419.43 for the balance due on the note executed in their favor by plaintiff on December 17, 1965, together with 8% interest from December 11, 1967, and 25% on principal and interest as attorney's fees.
Plaintiff answered the reconventional demand, admitted the execution of the note, but denied that it was given for a valuable consideration. At the time of trial, plaintiff voluntarily dismissed the claim for loss of wages in the amount of $228,344.00, and the trial judge ordered the claim for punitive damages in the amount of $12,500.00 stricken from the record.
Trial on the merits was before a jury, who rendered a verdict in favor of plaintiff on the original demand in the amount of $20,541.75, and found for defendant in the reconventional demand as prayed for. On a motion for remittitur by defendants, the trial judge ordered the plaintiff to remit all of said judgment in excess of $7,500.00, or, in the alternative, a new trial would be ordered. Plaintiff, under protest, agreed to the remittitur and judgment was signed by the trial judge in favor of plaintiff on the main demand for $7,500.00, and the defendant, American Finance Corporation, plaintiff in reconvention, for the sum of $419.43, plus interest and attorney's fees.
A suspensive appeal was perfected by defendants who assigned as error the finding by the jury and trial judge that plaintiff was entitled to any judgment since the defendants were guilty of nothing more than an effort to collect a legitimate indebtedness owing by plaintiff and alternatively, in the event plaintiff is entitled to any award, the amount awarded is manifestly excessive and not commensurate to any damages proven by plaintiff.
There is no merit to the contention of the plaintiff, defendant in reconvention, that the note sued on, signed by him on December 17, 1965, is not a binding obligation *515 because of a lack of consideration. Article 1759(2) of the Louisiana Civil Code reads as follows:
"Art. 1759. Although natural obligations can not be enforced by action, they have the following effect [effects]:

* * * * * *
"2. A natural obligation is a sufficient consideration for a new contract."
A mere acknowledgment of an indebtedness previously discharged in bankruptcy is not an enforceable obligation. However, a definite, direct and specific promise to pay a previously discharged indebtedness, in a definite manner, has been held to be enforceable. Securities Finance Company v. Marbury, La.App., 180 So.2d 737 (1st Cir., 1965), and other authorities cited therein.
We, therefore, find that the execution of the note by Booty, payable in a specified manner, is a legally enforceable obligation, the consideration therefor being the previous indebtedness owed to American Finance. Although he had been legally excused from paying this debt by the bankruptcy procedure, the moral or natural obligation remained, and, having elected to revive it by signing the note, he is once again legally responsible for the balance due.
As a general rule, the communication by a creditor to the employer of his debtor that the employee has failed to pay an indebtedness, does not constitute an invasion of the employee's privacy which is actionable. The courts of this State, and elsewhere, have attempted to balance the interest of the creditor in collecting his debt against the right of privacy of the debtor as to his own affairs. Where the methods used by the creditor have been classed as unreasonable and of such a nature as to be coercive, then the courts of Louisiana have held that the conduct of the creditor is an actionable tort under Article 2315 of the Louisiana Civil Code and compensatory damages may be allowed for mental anguish and suffering not accompanied by physical injury. Graham v. Western Union Telegraph Co., 109 La. 1069, 34 So. 91; Tuyes v. Chambers, 144 La. 723, 81 So. 265; Quina v. Roberts et al., La.App., 16 So.2d 558 (Orleans, 1944); Pack v. Wise, La.App., 155 So.2d 909 (3d Cir., 1963).
For a very complete discussion of the problem of invasion of the privacy of a debtor by a creditor's attempt to collect a debt through communications with the debtor's employer, we refer the reader to the case of Pack v. Wise, supra, and the later cases of Boudreaux v. Allstate Finance Corporation, La.App., 217 So.2d 439 (1st Cir., 1968); and Passman v. Commercial Credit Plan of Hammond, Inc., La.App., 220 So.2d 758 (1st Cir., 1969).
In the latest case on the question, Passman v. Commercial Credit Plan of Hammond, Inc., supra, our breathren of the First Circuit Court of Appeal, in finding the conduct of the creditor not actionable, distinguished it from the Pack v. Wise case as follows:
"In the Pack case, we believe that the Court clearly held that the defendant was unreasonable in pursuing the payment of the alleged indebtedness. Such is not the case in the suit before us. Here the employer was merely informed that the creditor had a judgment against the employee and that the creditor would take garnishment proceedings if the matter was not settled. No threats were made either by the creditor or the employer to his employee, and certainly no damages were caused the employee; who, at the time of the suit was still working for the same employer and had received a substantial raise in salary. We, therefore, feel that the invasion of privacy in the present suit was not an actionable one." 220 So.2d 758, 763.
In the case of Quina v. Roberts et al., supra, the court reviewed the action of a creditor in sending a letter to an employer *516 informing him of the employee's indebtedness and enclosed an official appearing form which was styled "Final Notice before Suit." The court found this to be unreasonable in the following language:
"But whatever be the sound rule at common law respecting the libelous character of publications of this kind, it is manifest to us that the issuance of the letter and enclosure in this case, for the obvious purpose and design of forcing a payment by plaintiff, constituted a tort under our law and that plaintiff is entitled to redress even though he was unable to prove special damage. And it makes no difference whether the publication is considered to be libelous or not. It is well settled, even in the common law states, that damages will be allowed for mental anguish suffered by a debtor in cases where the creditor has pursued unseasonable methods in attempting to make collection of his claim. See 33 American Jurisprudence, verbo `Libel and Slander', section 61, pages 79 and 80, 41 American Jurisprudence, verbo `Privacy', section 30, page 947, and a comprehensive note contained in 91 A.L.R., beginning at page 1495, entitled `Mental Anguish due to Collection Methods.' These authorities, which are supported by cases from several states, reveal that, while it is doubtful that writings like the one in the instant case are libelous, yet they are classed as torts for which recovery may be had without proof of particular damage. In some cases, relief has been granted on the ground that the publications were libelous and in others on the ground that there had been an invasion of the plaintiff's right of privacy."
In all cases in this State in which the conduct has been held actionable and redress allowed, the courts have found that the means employed constituted coercion. Each case, of course, must be considered on its own facts to determine whether coercion exists.
In the case under review, the repetitious nature of the communications could only have been intended for one purpose, to attempt to cause the plaintiff to be fearful of losing his employment. As we understand the evidence, no less than ten letters were sent within a brief period of approximately three months, besides the telephone communications with the Shreveport branch manager. As pointed out in the Quina v. Roberts case, supra, it is not necessary that the communications be slanderous or libelous, if they are unreasonable and intended to coerce.
Plaintiff testified that in a telephone conversation with Herb Epps, he requested the defendants to quit writing the letters to his employer, or otherwise he would lose his job. He further testified that Epps said that if he didn't pay the entire balance of the note he would run plaintiff out of town. After stating that he did not run easy, Booty testified Epps clarified his statement to mean that he would see that he was fired from every job until he left Shreveport.
On cross-examination, when questioned about this conversation, the witness, Epps, was evasive in his answers and did not positively deny having made this threat.
We believe, as did the trial judge and jury, that the purpose and design of defendant in sending the series of letters was to exert coercion on plaintiff to force him to pay the entire balance of his indebtedness or possibly suffer the loss of his job.
Although the plaintiff is entitled to some redress, the evidence in the record does not disclose any special damages sustained by him. In the cases of Quina v. Roberts et al., supra, and Boudreaux v. Allstate Finance Corporation, supra, a nominal award of damages was allowed, although no special damages were proven. We feel that an award of $1,000.00 would be adequate under the circumstances of this case.
We wish to make it abundantly clear that we do not intend to infer that a creditor may not communicate with the employer of *517 his debtor without subjecting himself to an action in damages. Each case must be judged on its own facts as to whether the communication was reasonable and not calculated to be coercive.
For the foregoing reasons the judgment appealed from is amended to reduce the amount awarded to plaintiff to the sum of $1,000.00, and as amended is affirmed.
All costs of this appeal are to be paid by appellant, Walter Truitt Booty.