378 So.2d 1032 (1979)
FORD MOTOR CREDIT COMPANY, Plaintiff-Appellant,
v.
Katie M. DIFFEY, a/k/a Katie Diffey Harrison, Defendant-Appellee.
No. 13984.
Court of Appeal of Louisiana, Second Circuit.
December 3, 1979.
Rehearing Denied January 9, 1980.
Writ Refused March 3, 1980.
*1033 Pipes & Pipes, by William F. Pipes, Jr., Monroe, for plaintiff-appellant.
Baker, Culpepper & Brunson, by J. Michael McDonald, Jonesboro, for defendant-appellee.
Before PRICE, MARVIN and JONES, JJ.
En Banc. Rehearing Denied January 9, 1980.
MARVIN, Judge.
The legal issue in this appeal is whether the particular conduct of the creditor, which attempted collection from its debtor under an automobile financing contract, invaded the privacy of its debtor or unreasonably coerced and intentionally inflicted emotional distress upon its debtor.
The lower court concluded that the creditor's conduct constituted unreasonable coercion and awarded the debtor $1,000 in damages. We accept the trial court's stated findings as to particular facts and where findings on other fact issues were not made, we examine those fact issues in a light most favorable to the debtor. We find, however, that the trial court was clearly wrong in legally concluding that the conduct in question amounted to unreasonable coercion. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
About six months before her marriage, Ms. Diffey purchased a Ford automobile and agreed to pay the balance in 36 monthly installments beginning in March 1976. In December 1976 Ms. Diffey and her husband were hospitalized and were temporarily *1034 unable to work. By agreement, the January 1977 installment payment was deferred. Because of one or more NSF checks and late payments between February and June 1977, the lower court found that "a misunderstanding arose as to whether payments were being made on time." The lower court also found that the account was delinquent when the creditor brought suit on July 1, 1977. Ms. Diffey reconvened for damages and before trial, satisfied the creditor's principal demand by payment to the creditor.
We are concerned with the creditor's collection efforts between April 15 and June 8, 1977. These efforts included several telephone calls and two visits by the creditor's collector (Ernest) to the telephone company in Ruston where Ms. Diffey was employed as a secretary.
Ernest telephoned Ms. Diffey at work to tell her that her April 14 check was NSF. She told him she could not talk to him because she was "on the job" and requested that he talk to her husband.
A second call was made about May 2, following which Ms. Diffey's husband telephoned to instruct Ernest that he should make any further calls direct to him, as Ms. Diffey's husband. It also appears that Ms. Diffey's husband told Ernest in this telephone conversation or in one which occurred within a few days afterward, not to make any more telephone calls to Ms. Diffey at her place of employment.
On June 1, Ernest was in Ruston on a routine collection trip from his Monroe office and inquired at the telephone office as to Ms. Diffey's whereabouts. Ms. Diffey's supervisor informed Ernest that Ms. Diffey was on vacation. On a routine trip on June 8, Ernest found Ms. Diffey at the telephone office and invited her outside the building to discuss her account. On both occasions, Ernest timed his visit during the normal lunch hour and was careful not to discuss with others the nature of his visit to Ms. Diffey.
The testimony of the co-employees whom Ms. Diffey said were aware of either or both the purpose of Ernest's visit and the delinquent account is categorically contrary to Ms. Diffey's contentions. None of the telephone company employees testified that they knew anything of Ernest or the purpose of his visit. Only after suit was filed, and then through Ms. Diffey's attempts to corroborate her reconventional demand for damages, did these employees learn about the visit or its purpose. The lower court found "some question as to who heard the conversation between [Ms. Diffey] and [Ernest]..." but did not resolve this question. There is no testimony that the conversations between Ms. Diffey and Ernest were overheard by anyone.
Louisiana recognizes that a creditor may be liable in damage for unreasonable acts of coercion in collecting a debt. Tuyes v. Chambers, 144 La. 723, 81 So. 265 (La. 1919); Hamilton v. Lumberman's Mutual Casualty Co., 82 So.2d 61 (La.App.1st Cir. 1955); Pack v. Wise, 155 So.2d 909 (La. App.3d Cir. 1963); Columbia Finance Corp. v. Robitcheck, 142 So.2d 625 (La.App.4th Cir. 1962); Quina v. Roberts, 16 So.2d 558 (La.App.1944); Booty v. American Finance Corporation of Shreveport, 224 So.2d 512 (La.App.2d Cir. 1969).
"Whether or not a debt is justly due, the law recognizes a right in a debtor to be free from unreasonable coercion and also to be free from unreasonable violations of his right to privacy in his personal affairs, and the debtor is entitled to general and special damages in tort for violations of his rights in these regards." Pack, supra at p. 912.
Each case must be decided on its own unique facts. Booty, supra.
In Booty, supra, we recognized that a non-coercive communication by a creditor to a debtor's employer is not actionable. See also Columbia Finance Corp., supra.
Essentially the rationale of the cases attempts to balance the interest of the creditor in reasonable collection efforts and interest of the right of privacy enjoyed by the debtor. Pack, supra. Resolution hinges upon when and if the conduct and communications of the creditor becomes unreasonable *1035 and intentionally coercive. See Quina, supra. A creditor's conduct in advising a judgment debtor's employer of the possibility of execution by garnishment proceedings was held not to have been unreasonable where no threats were made to the judgment debtor by the creditor or the employer and the judgment debtor continued in his employment. See Passman v. Commercial Credit Plan of Hammond, Inc., 220 So.2d 758 (La.App.1st Cir. 1969). Several letters and telephone calls to a debtor's employer before suit soliciting assistance in collecting the debt were held unreasonably coercive in Booty, supra.
Ms. Diffey and her husband lived in Hodge. When Ernest was often unsuccessful in attempting to telephone her at home he telephoned her at her place of work. He generally obeyed her instructions not to telephone her "on the job" and thereafter twice attempted, once successfully, to personally contact her at her place of employment, but during the lunch hour. He was careful not to disclose the purpose of his visit to anyone but Ms. Diffey. There is absolutely no evidence that Ms. Diffey's employment relationship was strained or jeopardized. Ms. Diffey's fellow employees learned nothing from Ernest's visits or conversations. Her emotional distress was not caused by any conduct of the creditor, whose conduct we find was reasonable and not coercive.
Under these circumstances, at appellee's cost, judgment below is reversed and the reconventional demands of Ms. Diffey are rejected.
REVERSED AND RENDERED.