465 So.2d 868 (1985)
C.G. PEARCE, Plaintiff-Appellant,
v.
Pete AUSTIN, dba Austin Construction Company, Defendant-Appellee.
No. 16785-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1985.
*870 Hayes, Harkey, Smith & Cascio by Thomas M. Hayes, III, Monroe, for plaintiff-appellant.
Grant & Dean by Philip T. Deal, Monroe, for defendant-appellee.
Before MARVIN and SEXTON, JJ., and PRICE, J. Pro Tem.
MARVIN, Judge.
In this action under the penalty wage statutes (LRS 23:631-632), Pearce, who resigned as a salesman for the defendant construction corporation, Austin, appeals that part of a judgment which rejected his demands for penalties and attorney fees on $2,948 in commissions which became due after he resigned and which were awarded Pearce in the judgment against Austin.
By answer to Pearce's appeal, Austin seeks to reverse the trial court's rejection of its reconventional demands and to have this court award it $4,900 in damages against Pearce for his alleged breach of an agreement to keep "confidential" the "files, estimates, et cetera, which were worked [by Pearce] while an employee [of Austin] ..." LRS 23:921. We amend to award attorney fees and, as amended, affirm.

FACTS
We view the record most favorably toward supporting the judgment and consider the trial court's reasons for judgment. Ford Motor Credit Co. v. Diffey, 378 So.2d 1032 (La.App. 2d Cir.1979), writ refused 381 So.2d 508 (La.1980); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Austin sold and erected prefabricated metal buildings. When Austin decided to change its primary supplier of metal buildings from Varco-Pruden to A & S, Pearce became dissatisfied and resigned as a salesman for Austin on February 15, 1982.
From Austin's profit, Pearce was customarily paid a draw of $300 per week and 26½ percent of Austin's net profit as commissions, plus his expenses periodically and finally, as each construction project progressed and when the owner periodically and finally paid Austin and when the net profit was computed. When Pearce resigned, Austin had several construction projects in various stages of completion. By letter agreement of February 15, 1982, Pearce and Austin agreed that Pearce's commissions on the "anticipated profit" from the projects then in progress would amount to $6,334. After these projects were paid for, Austin computed the commissions due at $5,368, which, after credits for payments to Pearce totaling $2,420, left an admitted $2,948 commission owed to Pearce. Judgment was rendered in Pearce's favor for this amount and this portion of the judgment is not complained of by either litigant.
Pearce made the original computation of the commissions due him, based on Austin's "anticipated profits" as mentioned in the February 15 letter agreement. This computation was "reviewed and agreed to" and was used by Austin who wrote the letter agreement. This agreement contained this paragraph which is relied on by Austin to support its reconventional demand:
All files, estimates, etc. which were worked in any fashion while an employee of Austin Construction Corp. are to remain *871 a confidential matter within the offices of Austin Const. Corp. and are to remain the property of Austin Construction Corp.
In August 1981, Pearce, for Austin, had bid $28,690 on a sub-bid to W-W Construction Company, a general contractor, to supply and erect a Varco-Pruden metal building for a Delhi church. The church did not proceed with its building program or accept any bids because costs were higher than the church anticipated. After increasing its fund raising effort, the church then sought to slightly modify the specifications of the metal building to decrease costs and asked W-W Construction about doing the job on a cost-plus basis.
The church spokesman was a deacon (Bryant) who was also an employee (construction superintendent) of W-W Construction. Bryant contacted Pearce about a Varco-Pruden metal building and Pearce then bid, on his own, $28,100 to supply the building, slightly modified from the August 1981 building, on the general contract. Bryant, for the church, along with W-W Construction Company, and Pearce signed the sub contract to this effect on February 25, 1982. This contract was completed. Pearce testified his net profit on his part of the contract was $2,492.
In its reconventional demand against Pearce, Austin estimated that it would have made $4,900 net profit on the Delhi church job had not Pearce allegedly "breached" his obligation under the February 15, 1982, letter agreement.
Bryant died before trial, but his dual capacity (for the church and for the general contractor) was explained by an executive of W-W Construction Company (Harold Walters) and by Pearce. Bryant's knowledge and desire that the church have a Varco-Pruden building supplied by Pearce must be imputed to the general contractor, notwithstanding that Walters testified that he "thought" at first in 1982 he was dealing with Austin through Pearce, as he had been in 1981. The contract of February 25, 1982, clearly identified Pearce as contracting for himself and not for Austin and was signed by Walters, for the general contractor, by Pearce, and by Bryant, for the church. Walters admitted on cross-examination that he had concluded that Pearce "outhustled" Austin in 1982 to supply the metal building. Other testimony related details of the slight, but nonetheless, modifications, such as in the gauge of the sheeting, in the 1982 contract as compared to the sub-bid in August 1981 made by Pearce for Austin. The trial court's conclusion that the 1982 contract was "a separate and distinct contract ... from that previously considered [in August 1981] ..." is supported by the record and is not clearly wrong or manifestly erroneous.

IS THE LETTER AGREEMENT OF FEBRUARY 15, 1982, ENFORCEABLE?
LRS 23:921 has stated the statutory policy of Louisiana for more than 20 years. An agreement by an employee not to engage in any business competing with his employer shall be null and unenforceable in any court unless the employer has incurred substantial expenses to train the employee or to advertise the employee's connection with the business. Orkin Exterminating Company v. Foti, 302 So.2d 593 (La.1974).
There is no evidence that Pearce took from Austin any files, estimates, or work papers belonging to Austin when Pearce resigned. The Varco-Pruden catalogue of buildings which Pearce retained when he left was not a file, an estimate, or a paper worked by Pearce while in Austin's employ and was available to Pearce or to almost anyone on request to Varco-Pruden.
Resigning salesmen who surrendered to their employer their work papers and customer lists cannot be enjoined from using their memories and knowledge that is generally available to the public to compete for sales against their former employer on the allegation of [mis]use of alleged secret information. Gulf Toy House, Inc. v. Bertrand, 306 So.2d 361 (La.App. 3d Cir.1975). There, as here, the contract did *872 not expressly forbid the resigning employee from soliciting potential customers of the former employer.
Under the circumstances of this record, Pearce did not breach any confidential relationship he had with Austin by relying on his memory to solicit either the church or the general contractor to purchase a metal building from him. Likewise, Pearce did not "interfere" with or negate any contract Austin had with the church or with the general contractor, both of whom were potential customers of any supplier of metal buildings. Austin simply had no enforceable contract with either the church or the contractor to supply them with metal buildings even though Walters testified that he "preferred" Austin over other suppliers. Pearce simply "outhustled" Austin, as Walters phrased it.
Austin argues that the letter prohibited Pearce from taking projects from Austin that were "already underway" when Pearce resigned. Austin contends that the Delhi Church job was "an ongoing building process" "awaiting ... the awarding of the [1982] contract" and that Pearce withheld from Austin the alleged inquiry from Walters about the 1982 contract. There was no misuse, however, by Pearce of any secret information belonging to Austin. Even assuming that the letter agreement has some effect to prevent a breach of loyalty owed to an employer, the trial court found no breach or surreptitious withholding of information and implicitly resolved credibility questions in Pearce's favor. We find no abuse of the trial court's discretion in this respect.
The trial court did not err in rejecting Austin's reconventional demand under the circumstances.

ATTORNEY FEES AND PENALTIES ON THE MAIN DEMAND
Plaintiff argues that the trial court erred in not granting plaintiff penalties and attorney's fees under LRS 23:632, which applies to enforce the requirements of § 631. The trial court found that Pearce's commissions were not, at the time of Pearce's resignation, "then due", and held the statute inapplicable, denying penalties and attorney's fees.
We believe the trial court gave a narrower reading to the statute than intended by the legislature.
Mason v. Norton, 360 So.2d 178 (La. 1978), stated that the phrase "by the day, week, or month" described the pay period rather than the method of calculating, or rate of, pay. Before Mason, this court held the statute inapplicable when the rate of pay and the term of employment were indefinite. Gatti v. Southern Research Company, Inc., 271 So.2d 376 (La.App. 2d Cir.1972). There the pay period was found to be suspended until a specified time after the occurrence of a condition. The statute was also held inapplicable when the term was definite, but short (25 days), even though the rate and period of pay were both by the week. Benham v. Guilbeaux, 356 So.2d 1062 (La.App. 3d Cir.1978), writ refused 358 So.2d 642 (La.1978).[1]
We agree with Mason that the phrase "by the day, week, or month" describes the pay period. We have considered the phrase to be merely illustrative and not exclusive. Dilley v. Cain, 368 So.2d 787 (La.App. 2d Cir.1979). The pay period as well as the rate of pay and the term (or lack thereof) of employment should not be determinative of the statute's applicability in all circumstances. Mason expressed the purpose of the statute:
"The statute is designed to assure the prompt payment of wages upon an employee's discharge or resignation." (Emphasis ours.) Mason, supra, at p. 180.
The more pertinent and relevant inquiry is the existence of the employment relationship rather than the rate, or period of pay and/or term of employment. Compare *873 Keith v. Little, 434 So.2d 548 (La.App.2d Cir.1983).
Originally the statute required that employers pay departed employees within 24 hours of their departure, whether the term of employment was by the day, week, or month. A 1977 act of the legislature changed the period from one to three days and added the word "hour" to the phrase "day, week, or month." Obviously, "day, week, or month" in the previous version of the statute was designed to assure that a departed employee would not have to wait until the employer's regular or scheduled pay day for his wages. An employer who routinely paid his employees at the end of the week or month was required to pay a resigning employee within the statutory time. Otherwise penalties and attorney fees were to be assessed against the employer.
The addition of the word "hour" to the phrase was an apparent legislative attempt to overrule cases in which the courts denied an employee coverage under the statute because the employee was paid hourly rather than daily, weekly, or monthly. See, e.g., Gros v. LeBlanc, 304 So.2d 49 (La. App. 1st Cir.1974); Mason v. Norton, supra.
Pearce was paid a $300 a week draw against his commission payments. By agreement, the commission payments were not paid Pearce until Austin was paid by the owner of a particular job and net profits computed. When Pearce left Austin, payment had not been received on several jobs Pearce had sold. Austin testified that he received final payment for the three jobs at issue on April 15, April 20, and July 20, 1982. Austin did not attempt, however, to pay or to tender any amount to Pearce after he resigned, notwithstanding Pearce's demands made by personal letter on June 22, 1982, by his attorney's letter September 27, 1982, and by filing suit April 4, 1983.
The term "wages" includes commissions. Stell v. Caylor, 223 So.2d 423 (La.App. 3d Cir.1969), writ refused; Nolfo v. Landeche, 339 So.2d 1331 (La.App. 1st Cir.1976); Hess v. Pembo, 422 So.2d 503 (La.App. 4th Cir.1982).
The statutory penalty provisions of course yield to equitable defenses. See Haywood v. Salter, 421 So.2d 1190 (La.App. 2d Cir.1982) and cases there cited. Where the amount owed the employee is the subject of a bona fide dispute, the courts have not considered the failure to pay as an arbitrary refusal and have denied penalties. Haywood, supra. The record supports the conclusion that Austin had a bona fide belief that it was entitled to an offset and did not owe Pearce any amount. Thus we deny plaintiff's claim for penalties.

ATTORNEY FEES
A good faith and unarbitrary, although unsuccessful, defense by an employer, as we have said, excuses the employer from penalty wages under § 632. Carriere v. Pee Wee's Equipment Co., 364 So.2d 555 (La.1978), held, however, that such circumstances do not excuse the employer from the attorney fees that the legislature mandated be taxed as cost against the employer when the employee filed a well-founded suit for any unpaid wages. § 632, supra. There the defendant employer was held "excused" from the statutory penalty but not from the attorney fees. Carriere expressly overruled several cases to the contrary and allowed $750 attorney fees to the employee on his well-founded suit to recover $162 wages due him.
Pearce's suit for unpaid commissions is equally well-founded. The employer computed what was owed and when it was owed. Pearce proved his demands on Austin. Under these circumstances and notwithstanding that Austin is excused from § 632 penalties, Austin is not excused from § 632 reasonable attorney fees. The trial court erred in concluding otherwise. Carriere, supra; Haywood, supra. In Haywood, we awarded attorney fees ($750) that were more than twice as much as the wages awarded ($323).
*874 Pearce's counsel charged him with 34 hours before trial. Trial was concluded in one day. Pearce's counsel appealed the judgment and filed an appellate brief. Considering also the amount of the judgment, we deem that a reasonable attorney fee should be assessed in the amount of $2,750.

DECREE
The judgment is amended to tax as costs $2,750 as attorney fees to be paid to plaintiff's counsel, and as amended, judgment is AFFIRMED at appellant's cost.
NOTES
[1] After Mason applicability of the statute has been denied in two cases where the term was specified. Van Dung v. Tel Ag Services, Inc., 407 So.2d 1339 (La.App. 3d Cir.1981); Alexander v. American Food Management, 424 So.2d 1246 (La.App. 3d Cir.1982).