588 So.2d 1305 (1991)
Kathy MITCHELL, Plaintiff-Appellee,
v.
Parker TURNER, Defendant-Appellant.
No. 22998-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1991.
R. Cody Mayo, Jr., Shreveport, for defendant-appellant.
Leroy H. Scott, Jr., Shreveport, for plaintiff-appellee.
*1306 Before MARVIN, C.J., and SEXTON and STEWART, JJ.
MARVIN, Chief Judge.
In this action arising out of an employment contract, Parker Turner appeals a judgment awarding Mrs. Mitchell her unpaid wages, plus penalty wages and attorney fees under LRS 23:631, 632.
Turner contends the trial court erred in its finding that Mrs. Mitchell was guaranteed $2,000 per month for two months even if she terminated her employment early for good cause. He also complains that penalty wages and attorney fees should not have been awarded. We do not consider Mrs. Mitchell's demand in brief that she be awarded additional attorney fees for the appeal because she did not answer Turner's appeal. CCP Art. 2133; Bank of Logansport v. Sewell, 467 So.2d 1217 (La.App. 2d Cir.1985). See also Dixon v. Mid-South Rail Corp., 580 So.2d 438 (La.App. 2d Cir. 1991), writ denied.
We affirm.

FACTS
Mrs. Mitchell agreed with Turner to travel from Shreveport to Destin, Florida, to be a nanny for Turner's three-year-old daughter. Mrs. Mitchell learned of this job through a Shreveport employment agency that had been contacted by the secretary of Turner's Shreveport lawyer on Turner's behalf.
Mrs. Mitchell testified that after the lawyer's secretary informed her that she was guaranteed $2,000 a month for two months, or $4,000, plus travel expenses to and from Florida even if she terminated the employment early for a reasonable cause, she confirmed this agreement over the telephone with Turner in Florida. She denied that anyone told her that her salary would be prorated according to the time worked if she terminated her employment for a reasonable cause or was discharged.
Elaine Blaylock, the employee of the agency who took the job order from the lawyer's secretary, testified that Mrs. Mitchell was guaranteed $2,000 per month for two months regardless of whether she stayed in Florida for two months or returned home early. Lynette Franks, another agency employee who filled the job order taken by Ms. Blaylock, testified that the job order guaranteed the $4,000 even if Mrs. Mitchell did not stay two months. Ms. Franks said she confirmed this with Ms. Anderson, the lawyer's secretary. Ms. Anderson agreed that Mrs. Mitchell was guaranteed $4,000 for two months employment. Only one witness, Sarah Goss, another secretary for Turner's lawyer, testified that she explained to Mrs. Mitchell that if she returned because she found the situation unsatisfactory, her salary would be prorated. Mr. Turner did not testify at trial or by deposition.
Mrs. Mitchell was initially told that the Turners were separated and Mrs. Turner was in drug rehabilitation. Mrs. Turner was in fact living in Mr. Turner's condominium in estranged circumstances.
After arriving in Florida May 12, 1989, Mrs. Mitchell discovered that the job was not as it had been represented. Instead of being provided with airfare, a car, and separate quarters as she was promised, she was asked to drive her own car to Florida and had to share space on the third floor of Turner's condominium.
On two separate occasions, Mrs. Mitchell found drugs on the floor of the condominium. She learned that both Mr. and Mrs. Turner were recuperating from drug addiction. Mrs. Mitchell twice was a passenger while Mrs. Turner drove an automobile under the influence of drugs.
Mrs. Turner spent most of each day at a boyfriend's condominium. Mr. Turner attempted to discuss with Mrs. Mitchell his hiring criminals to hurt or kill either or both Mrs. Turner and her boyfriend. On at least one occasion, the sheriff's office was called to the condominium of Mrs. Turner's boyfriend to squelch a confrontation between Mr. Turner and Mrs. Turner and her boyfriend.
Mrs. Mitchell telephoned the lawyer's secretary in Shreveport several times from Florida to explain her dissatisfaction with the situation. Ms. Anderson told her that *1307 she would pay Mr. Mitchell the money owed Mrs. Mitchell for salary and expenses and would fly Mr. Mitchell to Destin to drive back to Shreveport with Mrs. Mitchell. Mr. Mitchell was so instructed and received $1500, $300 of which was for travel expenses, from Ms. Anderson. Ms. Anderson also told Mr. Mitchell that the remainder of the money owed would be wired to Mrs. Mitchell when sufficient funds were available in Mr. Turner's account. Mr. Mitchell flew to Destin as instructed. He and his wife departed Destin June 1, 1989.
Despite her demand on Turner's lawyer for the remainder of the wages owed to her, Mrs. Mitchell was not paid what she was promised other than $300 travel expense money to Florida and the $1,500 given to her husband, which included $1,200 wages.
The trial court rendered judgment in favor of Mrs. Mitchell and against Mr. Turner in the amount of $2,800 unpaid wages and $6,000 penalty wages, plus legal interest, costs, and 25 percent attorney fees.

EMPLOYMENT CONTRACT
Turner contends Mrs. Mitchell was paid all wages that were owed her (May 12 June 1, 1989), arguing that their agreement was conditioned upon the fact that she could not voluntarily leave and expect to be paid the entire amount of the contract.
The fact that an employee is to be paid so much per month or per year does not raise a presumption that he or she was hired for that period, but only that she will be paid at that rate for the time worked, unless it is shown that the parties intended or custom dictated the hiring was for the entire period. Robledo v. Orr Motors of Louisiana, Inc., 582 So.2d 892 (La.App. 2d Cir.1991), citing Binnion v. M. & D. Drugs, 8 So.2d 307 (La.App. 2d Cir.1942).
Having no evidence of industry custom, we consider whether the intent of the parties for a fixed term of two months, as found by the trial court, is clearly wrong. Robledo, supra. On review, the intent element hinges on the particular circumstances of each case and the trial court's credibility findings. Robledo, supra, citing Weaver v. Purple Shield Life Ins. Co., 356 So.2d 519 (La.App. 1st Cir.1977), and Roussel v. James U. Blanchard & Co., Inc., 430 So.2d 247 (La.App. 4th Cir.1983).
In reasons for judgment, the trial court stated,
The contract of employment guaranteed plaintiff $4,000.00 even if she left early, provided she had reasonable cause for doing so. [Turner's attorney] acknowledges she had reasonable cause for leaving, and the record clearly supports such a conclusion.
Here, the trial court obviously accepted the testimony of Mrs. Mitchell, Ms. Blaylock, and Ms. Franks, while disregarding the testimony of Ms. Goss. Under the mandate of Rosell v. ESCO, 549 So.2d 840 (La.1989), we do not disturb factual determinations founded on credibility evaluations of the trial court. Under the circumstances of this record we cannot conclude that the trial court was clearly wrong in its determination in this respect.

PENALTY WAGES
Essentially reiterating his argument that Mrs. Mitchell was paid for the time that she worked, Turner complains that Mrs. Mitchell should not have been awarded $6,000 penalty wages under LRS 23:632 because any amount that may be due is not past due wages, but rather the unpaid balance of an employment contract or stipulated damages for breach of that contract.
Turner's Shreveport lawyer paid Mrs. Mitchell the $1,200 from Mr. Turner's account managed by the lawyer. Turner argues that this payment constituted full payment of the prorated amount due for the services rendered under the contract.
Mrs. Mitchell arrived in Florida May 12 and departed Florida June 1, 1989. Turner fails to explain the basis for prorating $2,000 a month to $1,200. We shall not speculate what number of days Mrs. Mitchell worked from May 12 through May 31, 1989, or attempt to prorate $2,000 per month to a number of days without any evidentiary basis to do so. No witness *1308 disputed that Mrs. Mitchell was to be paid by the month and not by the hour, day or week.
The statutory penalty provisions yield to equitable defenses. Where the amount owed the employee is the subject of a bona fide dispute, the courts have not considered the failure to pay as an arbitrary refusal and have denied penalties. Haywood v. Salter, 421 So.2d 1190 (La.App. 2d Cir. 1982); Pearce v. Austin, 465 So.2d 868 (La.App. 2d Cir.1985). The record does not indicate the basis for prorating $2,000 a month to $1,200 for up to 20 days work and does not allow the conclusion that Turner had a bona fide belief that he owed Mrs. Mitchell only $1,200 prorated wages for some number of days, May 12-June 1. Argument is not evidence. The trial court correctly awarded penalty wages.
Because we cannot conclude on this record that Mrs. Mitchell was correctly paid for some number of days between May 12 and June 1, we need not address Turner's contention that LRS 23:632 is not intended to cover amounts arising out of an employment situation which are not directly earned. Mrs. Mitchell was guaranteed wages of $2,000 a month for two months even if she terminated her employment with good cause before the end of the two-month period.

ATTORNEY FEES
Turner contends the trial court erred in awarding a 25 percent attorney fee ($2,200) because there is no evidence in the record about the cost of Mrs. Mitchell's attorney fees.
The legislature has mandated that attorney fees be taxed as costs against the employer when the employee files a well-founded suit for unpaid wages. Carriere v. Pee Wee's Equipment Co., 364 So.2d 555 (La.1978); Pearce v. Austin, supra. The purpose of LRS 23:632 is to encourage workers to file lawsuits when they have been unlawfully denied just compensation and to foster availability of counsel to such workers. Garrison v. Burger King Corp., 537 So.2d 834 (La.App. 5th Cir.1989).
Where the record does not detail the time and cost of an attorney's services, a court may nonetheless fix the fee from the record. James, Robinson, Felts & Starnes v. Powell, 303 So.2d 229 (La.App. 2d Cir.1974). These factors are considered to determine an attorney's fee on the basis of quantum meruit: the responsibility incurred, the extent and character of the labor performed, the importance of the questions presented, the amount involved, and the legal knowledge and ability of counsel. Peiser v. Grand Isle, 224 La. 299, 69 So.2d 51 (1953).
Where the nature and extent of services are shown by the record, it is the duty of the court to bring to bear its knowledge of the value of the services of counsel and to fix the value even in the absence of expert testimony. James, Robinson, Felts & Starnes v. Powell, supra, at p. 231.
In Pearce v. Austin, supra, we awarded attorney fees in the amount of $2,750 where the attorney charged plaintiff for 34 hours before trial, the trial was concluded in one day, the amount of the judgment was $2,948, and the judgment was appealed. In Pace v. Parker Drilling Co. & Subsidiaries, 382 So.2d 988 (La.App. 1st Cir.1980), writ denied, the court affirmed an award of $1,190 for attorney fees where the actual wages awarded were $38 and the penalty wages awarded were $1,152.
Here, seven witnesses testified during the course of the one-day trial. We can easily deduce that Mrs. Mitchell's attorney spent more than one other day preparing for trial in addition to preparing and filing pleadings. We also note her attorney briefed and orally argued the case on appeal. We find no error in the trial court's award of $2,200 attorney fees.

CONCLUSION
A person (Turner) employing an employee (Mrs. Mitchell) is required by statute to pay the employee the amount due under the terms of employment ($2,000 a month for two months even if she terminates the employment before two months for good cause) within three days following the date *1309 of discharge or termination, whether the employment is by the hour, day, week, or month. LRS 23:631.

DECREE
At Turner's cost, the judgment is
AFFIRMED.